[Cite as *State v. Hoover-Moore*, 2015-Ohio-4863.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| | : | No. 14AP-1049 |
| v. | : | (C.P.C. No. 02CR12-7503) |
| Kim Hoover-Moore, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on November 24, 2015

*Ron O'Brien*, Prosecuting Attorney, and *Laura R. Swisher*, for appellee.

*Timothy Young*, Ohio Public Defender, and *Joanna Feigenbaum*, for appellant.

APPEAL from the Franklin County Court of Common Pleas

KLATT, J.

{¶ 1} Defendant-appellant, Kim Hoover-Moore, appeals from a judgment of the Franklin County Court of Common Pleas denying her post-trial motions. For the following reasons, we affirm that judgment.

## I. Factual and Procedural Background

{¶ 2} In 2002, appellant was indicted on a number of charges arising from the death of an infant, Samaisha Benson, who sustained fatal injuries allegedly during the time she was in appellant's care. *State v. Hoover-Moore*, 10th Dist. No. 03AP-1186, 2004-Ohio-5541, ¶ 2. As this court noted in our previous opinion, Dr. Ellen McManus testified at trial that Benson suffered from "shaken baby impact syndrome," a sub-category of "shaken baby syndrome." According to Dr. McManus:

> "[S]haken baby syndrome" occurs "where a child, usually a small infant * * * is violently shaken and their head swings back and forth. The brain tends to bounce around inside the skull causing very tiny blood vessels that help the brain, feed the brain, get torn off and the blood starts to kind of pool around the brain itself, which causes pressure on the brain and can eventually kill the baby." (Tr. Vol.II, 365.)

*Id.* at ¶ 7.

{¶ 3} Dr. McManus described "shaken baby impact syndrome" as "essentially the same thing, violently shaking, but at some point the head actually impacts a hard surface and sustains a fracture." *Id.* While treating Benson, Dr. McManus ordered a CT scan of her head. The scan revealed a skull fracture, a subdural hematoma, and retinal hemorrhages. The coroner who performed an autopsy on Benson opined that the skull fracture and subdural hematomas resulted from being struck on the head by an object or the head striking an object. *Id.* at ¶ 11. The retinal hemorrhages suggested to the coroner that the baby had also been shaken. The coroner ultimately concluded that Benson died from "blunt impact to her head with the resulting fractures of the skull and subdural hemorrhages." *Id.* The coroner testified that the actual cause of death was swelling of the brain which can occur over a period of time, unless the traumatic event is so severe that it could cause incapacity within minutes, not hours. *Id.* at ¶ 12.

{¶ 4} The timing of those injuries was the critical issue at trial. Benson's mother testified that Benson was fine when she left her house at 11:30 a.m. Benson was there with her sisters and her father, who was to take her to appellant's house at 3:00 p.m. so he could go to work. The father testified that Benson was acting normally during that time. He testified that she was awake and crying when he took Benson to appellant's house. Appellant testified that Benson was asleep when she came to her house and slept for the next few hours. Sometime between 6:00 and 6:30 p.m., when appellant attempted to feed Benson, she noticed that Benson was having a hard time holding her head up and breathing. She called 911 at 6:39 p.m. *Id.* at ¶ 4, 27. Appellant denied harming Benson, but was the only adult with Benson for 3½ hours before that 911 call.

{¶ 5} Dr. McManus testified that Benson's injuries occurred "within probably minutes" of the 911 call. Another doctor, Dr. Charles Johnson, testified similarly. Dr. Gerald Steinman testified on appellant's behalf. He agreed that the baby's injuries were

consistent with shaken baby impact syndrome, but concluded that the injuries could have occurred while Benson was in the care of her parents before they dropped her off at appellant's house. *Id.* at ¶ 24. (Steinman testified that timeline was not minutes but hours.)

{¶ 6} The jury found appellant guilty of all charges and she was sentenced accordingly. This court affirmed. *Id.*[1] The Supreme Court of Ohio denied review. *State v. Hoover-Moore*, 119 Ohio St.3d 1475, 2008-Ohio-4911.

{¶ 7} In 2014, however, the trial court filed an entry in this case that ordered the keeper of records of Nationwide Children's Hospital to provide appellant and the state with an inventory of all records regarding Benson's care while at the hospital. It appears that the hospital provided this inventory. Months later, appellant filed in the trial court a motion to compel the production of records, seeking an order from the trial court for the hospital to release Benson's records. She sought those records so that a pediatric forensic pathologist could review them and provide an opinion regarding whether Benson's injuries could have been caused by something other than shaken baby syndrome or by someone other than appellant. The state objected, arguing that the trial court lacked jurisdiction to issue such an order and also that appellant was not entitled to postconviction discovery.

{¶ 8} Appellant also filed a motion for leave to file a delayed motion for new trial based on newly discovered evidence. Specifically, appellant argued that since her trial, "the medical community has recognized that a child who suffers from a brain injury could experience a period of lucidity for up to 72 hours before his or her symptoms become acute." To support this assertion, appellant cited what appears to be a book published in 2014 and a journal article published in 2005. She also argued that the medical community's opinion regarding the symptoms that were thought to be indicative of shaken baby syndrome had also changed.[2] She noted that the same symptoms could be caused by other non-abusive reasons. To support this assertion, appellant cited a journal

---

[1] We also affirmed the trial court's denial of appellant's petition for postconviction relief. *State v. Hoover-Moore*, 10th Dist. No. 07AP-788, 2008-Ohio-2020.

[2] *See State v. Harmon*, 9th Dist. No. 21384, 2003-Ohio-4153, ¶ 11 (noting the classic "triad of injuries" that are typically caused by shaken baby syndrome: cerebal edema, subdural hemorrhage, and retinal hemorrhages).

article published in 2012, a newspaper article published in 2012, and multiple court cases. She also attached to her motion an affidavit from a doctor who averred that she had been contacted about a forensic consultation regarding Benson's death and that she would need certain medical records to form an accurate and complete opinion.

{¶ 9} The trial court denied both of appellant's motions. In regard to the motion for leave, the trial court ruled that appellant did not produce newly discovered evidence; that the new medical opinions she presented were simply different opinions based on the same evidence presented at trial in an attempt to dispute the timing of Benson's injuries, an issue that was litigated during her trial. The trial court also noted that this was not just a "shaken baby syndrome" case because Benson suffered a skull fracture that would have involved significant force. Accordingly, the trial court denied appellant's motion for leave to file a delayed motion for new trial. As a result, the trial court ruled that it had no jurisdiction to order the production of documents in a closed criminal case.

## II. Appellant's Appeal

{¶ 10} Appellant appeals and assigns the following errors:

> [I.] The trial court abused its discretion when it failed to hold a hearing on Kim Hoover-Moore's Motion for Leave to File a Motion for New Trial when she presented new evidence that undermines her conviction, the record and circumstances supported Ms. Hoover-Moore's claim that she was unavoidably prevented from discovering the evidence at issue, and the delay in filing the material was reasonable under the circumstances.
>
> [II.] The trial court abused its discretion when it failed to grant Ms. Hoover-Moore's Motion for Leave to File a Delayed Motion for New Trial.
>
> [III.] The trial court abused its discretion when it failed to grant Ms. Hoover-Moore's motion to compel the production of medical records where she demonstrated that: (1) she was provided the records in pre-trial discovery, (2) the records were lost be counsel, through no fault of her own, (3) she made diligent efforts to obtain the records through other sources, (4) the records are central to her case, and (5) the trial court acknowledged it had jurisdiction to order the records by first ordering an inventory of the records.

### A. The Trial Court's Denial of Appellant's Motion for Leave to File a Delayed Motion for New Trial

{¶ 11} Appellant argues in her first and second assignments of error that the trial court erred by denying her motion for leave to file a delayed motion for new trial without a hearing. We conclude that any such error was harmless under the circumstances of this case.

### 1. Motion for Leave to File a Delayed Motion for New Trial Pursuant to Crim.R. 33(B)

{¶ 12} Appellant filed her motion for new trial pursuant to Crim.R. 33(A)(6), which provides that a new trial may be granted "[w]hen new evidence material to the defense is discovered which the defendant could not with reasonable diligence have discovered and produced at the trial." Such a motion must have been filed within 120 days after the verdict was rendered. Crim.R. 33(B). Appellant did not file her motion until much later than that date.

{¶ 13} Because appellant did not file her motion for a new trial based on newly discovered evidence within 120 days of the jury's verdict, she correctly sought leave from the trial court to file a delayed motion. *State v. Berry*, 10th Dist. No. 06AP-803, 2007-Ohio-2244, ¶ 19. To obtain such leave, the defendant must demonstrate by clear and convincing proof that he or she was unavoidably prevented from discovering the evidence within the 120 days. A party is "unavoidably prevented" from filing a motion for a new trial if the party had no knowledge of the existence of the ground supporting the motion and could not have learned of that existence within the time prescribed for filing the motion in the exercise of reasonable diligence. *Id.,* citing *State v. Lee*, 10th Dist. No. 05AP-229, 2005-Ohio-6374, ¶ 7, and *State v. Walden*, 19 Ohio App.3d 141, 145-46 (10th Dist.1984).

{¶ 14} An appellate court applies an abuse of discretion standard in reviewing a trial court's denial of a motion for leave to file a delayed motion for new trial. *State v. Anderson*, 10th Dist. No. 12AP-133, 2012-Ohio-4733, ¶ 9. A trial court's decision whether to conduct an evidentiary hearing on a motion for leave to file a motion for new trial is also discretionary. *State v. Cleveland*, 9th Dist. No. 08CA009406, 2009-Ohio-397, ¶ 54. Although an abuse of discretion is typically defined as an unreasonable, arbitrary, or

unconscionable decision, no court has the authority, within its discretion, to commit an error of law. *State v. Moncrief*, 10th Dist. No. 13AP-391, 2013-Ohio-4571, ¶ 7.

{¶ 15} Appellant alleged in her motion for leave to file a motion for new trial that she had been unavoidably prevented from discovering the evidence because she had been incarcerated and lacked the resources and ability to discover the medical advances. The trial court denied appellant's motion for leave but did not address whether appellant was unavoidably prevented from discovering the evidence she relied on in her motion. Instead, the trial court addressed and rejected appellant's arguments for a new trial on the merits. *State v. Alexander*, 11th Dist. No. 2011-T-0120, 2012-Ohio-4468, ¶ 22. *See also State v. Valentine*, 11th Dist. No. 2002-P-0052, 2003-Ohio-2838, ¶ 11 (affirming denial of motion for leave even without finding of unavoidable prevention where defendant did not present reason to grant new trial); *State v. Newell*, 8th Dist. No. 84525, 2004-Ohio-6917, ¶ 27 (same).

### 2. Crim.R. 33(A)(6) Motion for New Trial Based on Newly Discovered Evidence

{¶ 16} In order to grant a motion for a new trial based on newly discovered evidence, it must be shown that the newly discovered evidence upon which the motion is based: (1) discloses a strong probability that it will change the result if a new trial is granted, (2) has been discovered since the trial, (3) is such as could not in the exercise of due diligence have been discovered before the trial, (4) is material to the issues, (5) is not merely cumulative to former evidence, and (6) does not merely impeach or contradict the former evidence. *State v. Burke*, 10th Dist. No. 06AP-656, 2006-Ohio-4597, ¶ 13, citing *State v. Davis*, 10th Dist. No. 03AP-1200, 2004-Ohio-6065, ¶ 7; *State v. Petro*, 148 Ohio St. 505 (1947), paragraph one of the syllabus. Our review of a trial court's decision resolving a motion for new trial is limited to determining whether the trial court abused its discretion. *State v. Chavis-Tucker*, 10th Dist. No. 14AP-40, 2014-Ohio-3050, ¶ 5.

{¶ 17} The trial court concluded that appellant's evidence indicating the possibility of an extended period of time between a brain injury and the appearance of acute symptoms was simply additional medical evidence disputing the timing of Benson's injuries, an issue that had been central at appellant's trial. This conclusion comports with

the fifth and sixth prongs of the *Petro* test, which addresses evidence that is merely cumulative or that merely impeaches or contradicts evidence presented at trial.

{¶ 18} Here, appellant presented evidence indicating that the medical community now recognizes that a child who suffers a brain injury might not be acutely symptomatic for up to 72 hours. However, the timing of Benson's injuries was the central disputed issue at appellant's trial. The state's expert witnesses opined that Benson's injuries would become symptomatic within minutes of her injuries. Alternatively, appellant's expert witness opined that it could have been hours before Benson became symptomatic and that it was entirely possible that the injuries were inflicted while Benson was in the parents' custody. Thus, appellant's new evidence is merely cumulative to that of her own expert witness's testimony and, similarly, is additional evidence that simply contradicts or impeaches the opinions of the state's expert witnesses. *See State v. Babos*, 6th Dist. No. L-11-1258, 2013-Ohio-1256, ¶ 14 (denying motion for new trial based on new expert witness testimony for same reasons).

{¶ 19} Appellant argues that the new medical opinion is more akin to the change in expert opinion that occurred in *State v. Burke*, 10th Dist. No. 06AP-686, 2007-Ohio-1810. We disagree. In that case, we concluded that Burke was entitled to a new trial based on the change in testimony from a forensic pathologist who testified at trial but who later testified that his testimony was erroneous. Appellant's reliance on *Burke* is misplaced, as that case involved the actual change in an expert witnesses' opinion. Here, none of the witnesses have changed their expert testimony.

{¶ 20} The trial court also concluded that the medical community's new opinions regarding the diagnosis and symptoms of shaken baby syndrome were not relevant in this case because Benson had a skull fracture which indicated that this case involved more than just shaken baby syndrome. This conclusion comports with the first and fourth prongs of the *Petro* test, which in essence addresses the relevancy of the purported evidence. Appellant's claim addresses the medical community's change in how it diagnoses children with shaken baby syndrome when presented with certain injuries. This claim is not relevant here because Benson had additional injuries, most significantly a fractured skull, which distinguishes this case from a shaken baby syndrome case. *State v. Garcia*, 10th Dist. No. 03AP-384, 2004-Ohio-1409, ¶ 12 (expert testimony

distinguishing shaken baby syndrome from shaken impact syndrome); *State v. Hendrex*, 11th Dist. No. 2009-T-0091, 2010-Ohio-2820, ¶ 24 (same); *People v. Clay*, Ill.App. No. 5-09-0698 (Jan. 3, 2012) (same). Therefore, any change in how the medical community diagnoses an infant with shaken baby syndrome is not material in this case and does not create a strong probability of a different result.

{¶ 21} Because appellant's evidence does not satisfy the *Petro* requirements in order to warrant the granting of a new trial based on newly discovered evidence, the trial court did not abuse its discretion by rejecting appellant's arguments for a new trial. Therefore, we deny appellant's first and second assignments of error.

### B. Appellant's Motion to Compel the Production of Medical Records

{¶ 22} In appellant's third assignment of error, she claims that the trial court erred by not compelling the production of Benson's medical records from Nationwide Children's Hospital. The trial court denied appellant's motion to compel based on its denial of appellant's motion for leave to file a motion for new trial. The trial court concluded that as a result, it had no continuing jurisdiction to order the production of records because appellant's criminal case was closed. We agree.

{¶ 23} Appellant has not demonstrated any entitlement to engage in discovery in a closed criminal case. Nor do we find any such entitlement. *State v. Buchanan*, 9th Dist. No. 21709, 2004-Ohio-1232, ¶ 8-9 (no right to discovery after denial of motion for new trial filed 13 years after conviction). *See also State v.* West, 7th Dist. No. 07 JE 26, 2009-Ohio-3347, ¶ 17 (noting the absence of case law holding or rule that would allow discovery to be reopened in a closed criminal case); *State v. Mason*, 5th Dist. No. 01COA01423 (Oct. 3, 2001) (affirming decision of trial court to dismiss discovery requests made in closed case). Accordingly, we overrule appellant's third assignment of error.

### III. Conclusion

{¶ 24} Having overruled appellant's three assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

BROWN, P.J., concurs.
HORTON, J., dissents.

Horton, J., dissenting.

{¶ 25} I respectfully dissent. As the majority opinion points out, the timing of the injury was the critical issue at trial. Here, Hoover-Moore has presented evidence that new medical studies have shown that it is much more difficult to pinpoint the exact time of trauma than was previously thought, and to which the medical witnesses testified at the jury trial in 2003. The new studies indicate that there may be an extended period of lucidity between when a child suffers a brain injury and the onset of symptoms. As such, if the timing of the trauma to the infant is in doubt, then other natural, accidental, or abusive causes and/or suspects could come into play.

{¶ 26} Specifically, in regard to other potential suspects, both Samaisha's mother and father spent significant time with her on the day in question prior to delivering her to Hoover-Moore. (*See* Tr. Vol. II, 277-79, 298, 323-27.) The record indicates that there was a history of domestic violence between Samaisha's mother and father, and testimony that the father had shaken Samaisha's sister when the sister was only three months old. (Tr. Vol. II, 304-08; exhibit A, Motion for Leave to File a Delayed Motion for New Trial.) At the hospital, the mother thought that it was important to tell a social worker of her husband's history of abuse. (Tr. Vol. II, 288, 310-11.)

{¶ 27} While the above information regarding the parents' domestic violence issues was presented at the jury trial, the new medical studies could cast this testimony in a different light. At the trial, all of the medical testimony was clear that the injury had to have occurred within a few minutes of the onset of the symptoms, or at most within two hours before, i.e., while Samaisha was with Hoover-Moore. Without the presentation of the new medical evidence, potential logical suspects were effectively excluded from jury consideration. There was no medical evidence presented by either side that the injury could have occurred while she was with her parents. If the findings of the new studies are believed, it is possible that a jury could find that the injury occurred while Samaisha was with one or both of her parents.

{¶ 28} As the majority states, to obtain leave to file a motion for a delayed appeal, Hoover-Moore must show that she was unavoidably prevented from discovering the new evidence within 120 days of the jury's verdict. The jury's verdict was on November 7, 2003. The main study upon which Hoover-Moore relies was not published until 2014. In

addition, Hoover-Moore has been incarcerated since November 19, 2003, which presents inherent difficulties in staying current with the other relevant recently published medical studies or developments.

{¶ 29} The majority mentions that the "trial court denied appellant's motion for leave but did not address whether appellant was unavoidably prevented from discovering the evidence she relied on." The majority finds that the trial court's failure to hold a hearing on Hoover-Moore's motion for leave to file a delayed motion for new trial was "harmless under the circumstances." I would find that Hoover-Moore was unavoidably prevented from discovering the new evidence within 120 days of the jury's verdict, and I disagree that it was harmless error to fail to hold a hearing.

{¶ 30} Based on the above, the facts of this case warrant a hearing on Hoover-Moore's motion for leave to file a delayed motion for new trial. Therefore, I would find that the trial court abused its discretion in not holding a hearing on Hoover-Moore's motion for leave to file a delayed motion for new trial.

{¶ 31} I would sustain Hoover-Moore's first assignment of error, thereby rendering Hoover-Moore's remaining two assignments of error moot. Accordingly, I would reverse the judgment of the Franklin County Court of Common Pleas, and remand this action for a hearing on Hoover-Moore's motion for leave to file a delayed motion for new trial.

_____