[Cite as *State v. Biggs*, 2026-Ohio-2298.]

IN THE OHIO COURT OF APPEALS
FIFTH APPELLATE DISTRICT
STARK COUNTY, OHIO

| | |
|---|---|
| STATE OF OHIO,<br><br>    Plaintiff - Appellee<br><br>-vs-<br><br>JAY L. BIGGS,<br><br>    Defendant - Appellant | Case No. 2025CA00103<br>       2025CA00104<br><br><u>Opinion And Judgment Entry</u><br><br>Appeal from the Stark County Court of Common Pleas, Case No. 2008-CR-0653<br><br>Judgment:  Affirmed<br><br>Date of Judgment Entry: June 17, 2026 |

**BEFORE:** Craig R. Baldwin; Kevin W. Popham; David M. Gormley, Judges

**APPEARANCES:** KYLE L. STONE, Prosecuting Attorney, VICKI L. DESANTIS, Assistant Prosecuting Attorney, for Plaintiff-Appellee; ERIKA LAHOTE, NICHOLAS ALLEN, Assistant Public Defenders, for Defendant-Appellant.

*Baldwin, P.J.*

{¶1}   The appellant, Jay L. Biggs, appeals from two judgment entries of the Stark County Court of Common Pleas denying his motion for leave to file a motion for new trial and dismissing his petition for postconviction relief. The appellee is the State of Ohio.

**STATEMENT OF FACTS AND THE CASE**

{¶2}   In 2008, the appellant was indicted in the Stark County Court of Common Pleas on charges of aggravated murder, murder, rape, and endangering children in connection with the death of his infant daughter.

{¶3}   The State argued at trial that the appellant sexually assaulted his daughter and then caused her death by smothering or otherwise obstructing her breathing. The State presented medical testimony concerning injuries to the child's genitalia and the

cause and manner of death. Dr. Bertin, a urologist consulted during the autopsy process, testified to findings he interpreted as traumatic injury to the vaginal area. Dr. P.S. Murthy, the Stark County Coroner, testified concerning the autopsy findings and opined that the appellant's daughter died as a result of asphyxia due to smothering or compression of the nose and mouth. Dr. Lisa Kohler testified in rebuttal for the State.

{¶4}　The appellant denied responsibility. The defense called Dr. Werner Spitz, a forensic pathologist. Dr. Spitz disputed significant portions of the State's medical theory and challenged whether the State had established sexual assault or smothering.

{¶5}　Following the trial, the jury found the appellant guilty. The trial court sentenced the appellant to life in prison without the possibility of parole. The appellant pursued a direct appeal, and this Court affirmed his convictions. *See State v. Biggs*, 2009-Ohio-6885 (5th Dist.). The appellant later pursued additional postjudgment litigation, including litigation concerning access to tissue slides and other materials. This Court affirmed prior trial-court rulings in those proceedings. *See State v. Biggs*, 2013-Ohio-3333 (5th Dist.); *State v. Biggs*, 2016-Ohio-5305 (5th Dist.); *State v. Biggs*, 2020-Ohio-6691 (5th Dist.).

{¶6}　In 2024, the appellant filed a motion for leave to file a delayed motion for a new trial under Crim.R. 33 and a successive petition for postconviction relief under R.C. 2953.21 and R.C. 2953.23. In support, the appellant relied primarily upon newly obtained expert reports from Dr. Stephen Guertin and Dr. Janice Ophoven, medical literature or guidelines concerning suspected child sexual abuse, and materials concerning trial counsel's alleged failure to consult or present additional experts.

{¶7}　The appellant argued that the new expert reports and updated medical standards undermined the State's trial evidence. The defense experts opined that J.B.'s

hymen and genital anatomy were intact or normal, that the State's interpretation of discoloration and other findings was flawed, that histological review was important to confirm suspected abuse-related findings, and that the medical evidence did not establish sexual assault or homicidal smothering.

{¶8} The State opposed the filings. The State argued, among other things, that the appellant had not demonstrated he was unavoidably prevented from discovering the evidence upon which he relied; that the new reports were not newly discovered evidence, but new opinions concerning evidence and materials existing at the time of trial; that medical literature and guidelines were not new scientific evidence; that the claims were barred by res judicata or otherwise failed to satisfy the statutory requirements for successive postconviction relief; and that the appellant had not shown a hearing was required.

{¶9} The trial court denied the appellant's motion for leave to file a delayed motion for new trial and dismissed the successive petition for postconviction relief. The trial court concluded that the appellant failed to satisfy the threshold requirements for the relief requested.

{¶10} The appellant filed a timely notice of appeal and raised the following three assignments of error:

{¶11} "I. THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT FAILED TO GRANT BIGGS' MOTION FOR LEAVE TO FILE A MOTION FOR NEW TRIAL WHEN THE RECORD AND CIRCUMSTANCES DEMONSTRATED BY CLEAR AND CONVINCING PROOF THAT HE WAS UNAVOIDABLY PREVENTED FROM DISCOVERING THE NEW EVIDENCE."

**{¶12}** "II. THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT FAILED TO HOLD AN EVIDENTIARY HEARING ON BIGGS' MOTION FOR LEAVE TO FILE A MOTION FOR NEW TRIAL WHEN HE SET FORTH A PRIMA FACIE CASE THAT HE WAS UNAVOIDABLY PREVENTED FROM DISCOVERING THE NEW EVIDENCE."

**{¶13}** "III. THE TRIAL COURT ERRED WHEN IT DISMISSED BIGGS' POSTCONVICTION PETITION WITHOUT A HEARING WHEN THE RECORD SHOWS THAT (1) HE WAS UNAVOIDABLY PREVENTED FROM DISCOVERY OF THE FACTS UPON WHICH HE RELIES, AND (2) BUT FOR CONSTITUTIONAL ERROR IN HIS TRIAL, NO REASONABLE FACTFINDER WOULD HAVE FOUND HIM GUILTY."

**I., II.**

**{¶14}** In his first and second assignments of error, the appellant argues that the trial court erred by failing to grant his motion for leave to file a motion for a new trial and by failing to hold a hearing on that motion. We disagree.

**STANDARD OF REVIEW**

**{¶15}** We review the trial court's denial of the motion for leave to file a motion for a new trial under an abuse of discretion standard. *State v. Schiebel*, 55 Ohio St.3d 71 (1990). It is also within the sound discretion of the trial court to determine whether a motion for a new trial and the material submitted with the motion warrant an evidentiary hearing. *State v. Hill*, 1992-Ohio-43. An abuse of discretion implies more than an error of law or judgment; instead, it connotes that the trial court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219. When applying the abuse of discretion standard, an appellate court may not simply substitute its judgment for that of the trial court. *Id*.

**ANALYSIS**

**{¶16}** Crim.R. 33(B) states:

> Application for a new trial shall be made by motion which, except for the cause of newly discovered evidence, shall be filed within fourteen days after the verdict was rendered, or the decision of the court where a trial by jury has been waived, unless it is made to appear by clear and convincing proof that the defendant was unavoidably prevented from filing his motion for a new trial, in which case the motion shall be filed within seven days from the order of the court finding that the defendant was unavoidably prevented from filing such motion within the time provided herein.

> Motions for new trial on account of newly discovered evidence shall be filed within one hundred twenty days after the day upon which the verdict was rendered, or the decision of the court where trial by jury has been waived. If it is made to appear by clear and convincing proof that the defendant was unavoidably prevented from the discovery of the evidence upon which he must rely, such motion shall be filed within seven days from an order of the court finding that he was unavoidably prevented from discovering the evidence within the one hundred twenty day period.

**{¶17}** The verdict in the appellant's case was rendered on October 14, 2008, but he did not file his motion until November 19, 2024. "Because [the] appellant's motion was filed well outside the 120-day period, he was required to obtain leave of court to file his motion for new trial." *State v. Waddy*, 2016-Ohio-4911, ¶17 (10th Dist.). To obtain such leave, the appellant must demonstrate by clear and convincing proof that he was

unavoidably prevented from discovering the evidence within the 120 days. *State v. Hoover-Moore*, 2015-Ohio-4863, ¶13 (10th Dist.). A party is "unavoidably prevented" from filing a motion for a new trial if they had no knowledge of the ground supporting the motion and could not have learned of the existence of that ground within the time prescribed for filing the motion in the exercise of reasonable diligence. *Id*.

{¶18} "Clear and convincing proof is that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St.469 (1954), paragraph three of the syllabus.

{¶19} The "unavoidably prevented" requirement in Crim.R. 33 mirrors the "unavoidably prevented" requirement in R.C. 2953.23. *State v. Thornton*, 2017-Ohio-637, ¶47 (5th Dist.). "The phrase 'unavoidably prevented' means that a defendant was both unaware of the facts and was unable to learn of them through reasonable diligence." *Id*.

{¶20} The appellant contends that the trial court erred in concluding that he failed to establish unavoidable prevention. He relies on expert reports of Dr. Guertin and Dr. Ophoven, medical literature and guidelines, and the assertion that trial counsel failed to consult an appropriate expert concerning the alleged genital injuries.

{¶21} However, the expert reports the appellant seeks to rely on are not newly discovered evidence within the meaning of Crim.R. 33. They are new expert opinions interpreting, criticizing, and reweighing medical evidence that existed at the time of trial. "When a defendant prepares for trial, he and his attorney must research expert witnesses and make strategic decisions about which ones, if any, to have testify." *State v. Thompson*, 2012-Ohio-4862, ¶12 (2d Dist.). "A defendant's failure to locate and call a particular

expert witness does not provide grounds for a delayed motion for a new trial under Crim.R. 33[.]" *Id.*

{¶22} The appellant argues the reports are "new" because they were authored years after the trial and because the experts reached conclusions different from those presented by the State's experts. But the fact that an opinion was newly generated does not make the underlying facts newly discovered. *See, Thompson* at ¶12. The new reports merely offer a new evaluation of the same medical evidence. A defendant cannot transform existing trial evidence into newly discovered evidence by retaining a new expert to reinterpret it.

{¶23} Nor, on this record, do the medical guidelines satisfy Crim.R. 33(B). We recognize that a significant posttrial change in scientific knowledge concerning key trial evidence may, in an appropriate case, qualify as newly discovered evidence under Crim.R. 33. *See State v. Grad*, 2024-Ohio-5710, ¶¶63-64. But the appellant has not shown that the guidelines he cites reflect such a change. The materials do not identify a new scientific test, a newly discovered fact, or a repudiation of the medical principles available at the time of trial. Rather, the materials function as a summary, compilation, or application of principles and recommendations that were available, or reasonably discoverable, at the time of trial. On this record, the guidelines serve as support for a new expert critique of the State's trial evidence, not as newly discovered evidence within the meaning of Crim.R. 33(B).

{¶24} The record shows that the appellant knew at trial that the State's medical theory was central to the prosecution. The alleged genital injuries and the cause of death were disputed before the jury. Thus, the record supports the trial court's conclusion that

the factual basis for challenging the State's medical theory was known or reasonably discoverable at trial.

{¶25} The appellant also emphasizes that subsequent litigation resulted in access to the tissue slides and that his current experts reviewed those slides. However, the existence of microscopic slides was known, and the medical issues surrounding the alleged genital injuries were fully apparent at trial. The appellant's current argument is principally that different experts, applying different training and relying on additional medical literature, would interpret the same medical evidence differently. The reports, therefore, do not establish that the appellant was unavoidably prevented from discovering the core basis of his claim. Accordingly, we find that the trial court did not act unreasonably, arbitrarily, or unconscionably in finding that the appellant failed to show, by clear and convincing evidence, that he was unavoidably prevented from discovering any new evidence.

{¶26} The appellant also argues that the trial court was required to hold an evidentiary hearing because his supporting materials established a prima facie showing of unavoidable prevention. But the trial court may deny leave without a hearing when the motion and supporting materials fail to demonstrate, on their face, clear and convincing proof of unavoidable prevention. *State v. Cleveland*, 2009-Ohio-397, ¶54 (9th Dist.). As we discussed above, the record demonstrated that the appellant knew the relevant medical issues, knew the State's theory, and presented expert testimony in response. The later procurement of more favorable expert opinions does not establish unavoidable prevention and does not require the trial court to convene a hearing to test those opinions.

{¶27} Furthermore, we are not persuaded by the appellant's assertion that the trial court failed to understand the record before it. The trial court was not required to accept

the appellant's characterization of the new materials as newly discovered evidence merely because the materials were lengthy, technical, or generated after trial. The relevant question was whether the appellant demonstrated unavoidable prevention, and the trial court could conclude from the record that the central medical issues were known, disputed, and litigated at trial.

{¶28} Accordingly, the appellant's first and second assignments of error are overruled.

## III.

{¶29} In his third assignment of error, the appellant argues that the trial court erred in dismissing his postconviction petition without a hearing. We disagree.

## STANDARD OF REVIEW

{¶30} A trial court may not entertain successive petitions unless the petition satisfies the jurisdictional requirements of R.C. 2953.23. *State v. Apanovitch*, 2018-Ohio-4744, ¶36. Whether a trial court has jurisdiction to entertain an untimely or successive postconviction petition is a question of law reviewed de novo. *Id.* However, the decision to deny a postconviction petition without an evidentiary hearing is reviewed for an abuse of discretion. *State v. Lichtenwalter*, 2021-Ohio-1394, ¶45 (5th Dist.). Accordingly, we review de novo whether the appellant satisfied R.C. 2953.23, and we review the trial court's denial of a hearing for abuse of discretion. Again, an abuse of discretion implies more than an error of law or judgment; instead, it connotes that the trial court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219.

## ANALYSIS

{¶31} R.C. 2953.21 governs petitions for postconviction relief. R.C. 2953.23(A)(1) requires, in pertinent part, that the petitioner must show that he was unavoidably prevented from discovery of the facts upon which he relies. The petitioner must also show, by clear and convincing evidence, that but for constitutional error at trial, no reasonable factfinder would have found him guilty.

{¶32} The appellant's petition was successive. Accordingly, the trial court could not entertain it unless the appellant satisfied R.C. 2953.23. The trial court concluded that he failed to do so.

{¶33} The appellant first argues that he was unavoidably prevented from discovering the facts upon which his constitutional claims depend. His argument again rests primarily on the reports of Dr. Guertin and Dr. Ophoven, the medical literature concerning suspected child sexual abuse, and the claim that trial counsel failed to consult or present appropriate experts.

{¶34} For the reasons discussed in the first two assignments of error, the expert reports are not newly discovered facts. They are opinions formed after trial based on a review of existing case materials. R.C. 2953.23(A)(1)(a) speaks in terms of the discovery of facts, not the later discovery of a more favorable expert, a more persuasive litigation theory, or a different interpretation of evidence known at trial. *State v. Herring*, 2007-Ohio-3174, ¶26 (7th Dist.); *State v. Wilson*, 2009-Ohio-2347, ¶¶16-17 (9th Dist.). The constitutional framing of the appellant's claim does not eliminate the statute's jurisdictional threshold.

{¶35} The appellant maintains that his ineffective-assistance claim could not have been discovered earlier because trial counsel failed to consult proper experts. But the

factual basis for that claim was either known or reasonably knowable long before the present petition. The appellant knew the State's medical evidence was central to the prosecution, knew who testified for the defense, knew the scope of Dr. Spitz's testimony, and knew the jury had credited the State's theory over the defense theory. To the extent the appellant believed trial counsel should have obtained additional expert assistance, that assertion does not depend upon newly discovered facts that were unavailable for more than sixteen years.

{¶36} Nor do the medical guidelines and literature on which the appellant relies establish jurisdiction under R.C. 2953.23. Although the appellant characterizes those materials as "updated" guidance, he has not shown that they announced a scientific principle, repudiated a previously accepted medical standard, or reflected a posttrial shift in scientific understanding comparable to the change discussed in *Grad*. Rather, the record shows that the materials function as a summary or application of medical principles and recommendations, not as a new scientific test, newly discovered fact, or repudiation of a previously accepted medical standard. A later compilation of existing guidance is not a newly discovered fact. At most, it supplies additional support for the appellant's current experts' criticism of the State's trial testimony, but it does not demonstrate that the appellant was unavoidably prevented from discovering the factual basis of his claim.

{¶37} To the extent the appellant's petition also raised related constitutional claims, including due process, cumulative error, or claims premised on trial counsel's alleged failure to object, cross-examine, consult experts, or otherwise challenge the State's medical evidence, those claims do not alter the jurisdictional analysis. The trial court could not entertain a successive petition unless the appellant first satisfied R.C. 2953.23.

Because the appellant failed to establish that he was unavoidably prevented from discovering the facts upon which he relied, the trial court was not required to reach each constitutional theory on the merits.

{¶38} The appellant also fails to satisfy R.C. 2953.23(A)(1)(b), which states:

The petitioner shows by clear and convincing evidence that, but for constitutional error at trial, no reasonable factfinder would have found the petitioner guilty of the offense of which the petitioner was convicted or, if the claim challenges a sentence of death that, but for constitutional error at the sentencing hearing, no reasonable factfinder would have found the petitioner eligible for the death sentence.

{¶39} Even if the new reports cast doubt on aspects of the State's medical evidence, the statute required the appellant to show by clear and convincing evidence that, but for constitutional error at trial, no reasonable factfinder would have found him guilty. The trial court was not required to accept the new reports as conclusive. The original jury heard expert testimony from both sides. Dr. Spitz disputed the State's theory. The jury nevertheless found the appellant guilty.

{¶40} Further, the appellant's argument does not account for the entire trial record. The State presented evidence beyond the challenged medical testimony, including evidence concerning the appellant's opportunity, his being the last person to physically touch the child before she was found unresponsive, the circumstances in which the child was found, the blood evidence, and the appellant's statements and conduct after the child's death. The appellant's current experts offer additional impeachment and alternative interpretations of the medical evidence, but competing expert opinions do not

establish that no reasonable factfinder could have found the appellant guilty when considering the trial record as a whole.

{¶41} The appellant further contends that the trial court should have held a hearing before dismissing the petition. A hearing is not required when the petition, supporting materials, and record do not establish the jurisdictional requirements of R.C. 2953.23.

{¶42} Accordingly, we find the appellant failed to satisfy the jurisdictional requirements of R.C. 2953.23 and that the trial court did not abuse its discretion in dismissing the appellant's petition for postconviction relief without a hearing.

{¶43} The appellant's third assignment of error is overruled.

## CONCLUSION

{¶44} For the foregoing reasons, the judgment of the Stark County Court of Common Pleas is affirmed.

{¶45} Costs to the appellant.

By: Baldwin, P.J.

Popham, J. and

Gormley, J. concur.