[Cite as *State v. Thornton*, 2017-Ohio-637.]

COURT OF APPEALS
MUSKINGUM COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. Patricia A. Delaney, P.J. |
| Plaintiff-Appellee | : | Hon. John W. Wise, J. |
| | : | Hon. Craig R. Baldwin, J. |
| -vs- | : | |
| | : | Case No. CT2016-0041 |
| | : | |
| ERIC J. THORNTON | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:        Appeal from the Muskingum County
                                Court of Common Pleas, Case No.
                                CR2013-0200



JUDGMENT:                       AFFIRMED



DATE OF JUDGMENT ENTRY:         February 17, 2017



APPEARANCES:

For Plaintiff-Appellee:                 For Defendant-Appellant:

D. MICHAEL HADDOX                       ERIC J. THORNTON, PRO SE
MUSKINGUM CO. PROSECUTOR                Inmate No. A707-513
GERALD V. ANDERSON II                   Noble Correctional Institution
27 North 5th Street, P.O. Box 189       15708 McConnelsville Rd.
Zanesville, OH 43702-0189               Caldwell, OH 43724

*Delaney, J.*

{¶1}   Appellant Eric J. Thornton appeals from the "Findings and Decision" of the Muskingum County Court of Common Pleas dated July 25, 2016, overruling his joint motion for leave to file a delayed motion for new trial and petition for post-conviction relief. Appellee is the state of Ohio.

### FACTS AND PROCEDURAL HISTORY

{¶2}   The following evidence is adduced from the record of appellant's bench trial commencing on May 20, 2014.

*Testimony of Jimmy Martin*

{¶3}   This case arose on June 8, 2013, into the early morning hours of June 9, 2013, when Jimmy Martin went to the Cozy Corner Bar in Zanesville for a drink with his friend James Ricket.  In the bar they encountered appellant and Daniel Barnes, known to Martin and Ricket as "Fats" and "Louie."  Martin and Ricket decided to go to another bar, the "MVP," and Ricket asked if they could give appellant and Barnes a ride.  Martin agreed.  Martin was driving a rental car because he planned to leave for vacation the next day.

{¶4}   Martin drove with Ricket in the front passenger seat; appellant sat in the rear on the driver's side, behind Martin, and Barnes sat on the rear passenger side, behind Ricket.  Appellant and Barnes said they wanted dropped off at an address on Cliffwood Avenue in Zanesville.  The four arrived at the address but Barnes instructed Martin to drive around the block again.  When Martin came back around, he stopped the car and put it into park.  Appellant grabbed Martin from behind and Barnes grabbed Ricket.  Martin felt a gun placed to the back of his head and turned his head far enough

to see a laser beam coming off the gun from a laser sight. Barnes had a gun to Ricket's head.

{¶5} Barnes told Martin and Ricket to "Be easy." Martin put his hands up and said they could have his money. Barnes replied, "This isn't a robbery. Pop the trunk." Martin was unfamiliar with the car and didn't know how to pop the trunk.

{¶6} Appellant got out of the back seat, opened Martin's door, and unfastened his seat belt. Appellant found the button to pop the trunk and took Martin to the back of the car. Martin asked appellant, "Are you serious? Are you really going to do this?" and appellant told him to get in the trunk. Martin testified appellant ordered him into the trunk at gunpoint.

{¶7} Martin climbed into the trunk and appellant shut the lid. Martin observed a glow-in-the-dark trunk release lever and when he felt the car start, he popped the lever and jumped out of the trunk. He ran through yards toward Cliffwood Avenue, slipping and falling. Barnes took off in pursuit. Martin saw the beam of a laser sight on him and tried to dodge it as he ran. He ran up onto the front porch of a house and was about to knock when Barnes grabbed him.

{¶8} Martin and Barnes fought on the porch for 10 to 15 minutes. Barnes had the gun in his hand and the two struggled over it with Martin attempting to push it away. The gun went off. Martin hoped someone heard the gunshot and called police. He continued to struggle with Barnes, who was attempting to gouge his eye sockets. Martin "ran out of steam" and Barnes started dragging him down the street.

{¶9} The homeowner briefly opened her front door and saw two men fighting on her porch. She heard the gunshot and called 911.

{¶10} Barnes began to pistol whip Martin and Martin ran again. He caught sight of a police car and ran to it for help. The officer opened the back door and Martin fell inside, vomiting and stating someone was trying to kill him. Martin lost consciousness and woke up in a hospital, minus his eyeglasses, watch, and jewelry.

*Ricket's Trial Testimony*

{¶11} In the meantime, Ricket had remained in the rental car, with appellant now in the driver's seat. Ricket had also placed his cash and phone on the console in the middle of the car. He heard a noise outside which he testified may have been a gunshot. Ricket asked appellant what he was going to do to him and appellant told him he could go. Ricket left and walked to his home about a mile away while appellant stayed with the rental car. Later that night Ricket went to the hospital and visited Martin.

*Corroborating Evidence*

{¶12} Martin sustained a bite mark to his shoulder, road rash, a possible graze wound from a bullet, and numerous cuts and scratches. His eye was bleeding because a "chunk" of it had been scratched out.

{¶13} Ptl. Chris Andrews is the officer who picked up Martin. He had responded to the area of Cliffwood Avenue for a report of two men fighting on a porch. He testified that Martin ran out of the woods, jumped into his cruiser, and said "Fats" and "Louie" had pulled guns on him and robbed him. Martin appeared to have been in a fight; he was visibly injured, distraught, "worn out," and throwing up. Martin told Andrews about leaving the Cozy Corner with Ricket, "Fats" and "Louie;" having guns placed to their heads; handing over their money; being ordered into the trunk by appellant; and jumping out when the car moved. Martin further told Andrews of being chased down and assaulted

by Barnes; the gun going off; and Barnes dragging him down the street into the woods. Based on Martin's statements, Andrews briefly scanned the scene for evidence and observed blood on the banister of the porch at the house where the struggle occurred; jewelry including a watch, a ring, and an earring laying on the porch; a .9 millimeter shell casing; and what appeared to be a bullet hole in the house.

{¶14} Andrews was not further involved in the incident that evening but several days later, he was monitoring traffic when he saw a silver S.U.V. run a red light. Andrews pursed the vehicle, which initially failed to stop, and followed it as it ran another red light. Eventually the S.U.V. stopped and Andrews kept his eyes on the driver as he exited his cruiser. Andrews suspected the driver was about to flee or fight, and thus drew his weapon and crouched behind the cruiser door. The driver jumped out of the S.U.V. and took off running with Andrews in pursuit. As they ran, Andrews heard the noise of "a round being racked into a gun."

{¶15} At trial, Andrews identified appellant at trial as the driver who took off running. The parties stipulated that appellant dropped a firearm as he ran, which was discovered to be the same firearm the fired the shot into the house the night Martin was assaulted by Barnes. Appellant's D.N.A. was also found on the firearm.

{¶16} Wall Street in Zanesville is a dead-end street near a bar called the "U-Bar." A resident was out walking his dog at night when a "blacked-out" car pulled up across the street from his home. Two black males jumped out of the car and ran in opposite directions. The man went inside but looked out several hours later and saw the car was still parked outside, which was unusual because there is no reason to park on the dead-

end street. The man called police and reported the car, which was discovered to be the red Ford Fusion that was rented by Jimmy Martin.

{¶17} Inside, police found four cell phones, a scanner, and a small amount of cash and loose change. The car was processed for evidence and several latent fingerprints were developed on the trunk, the driver's door, and the rear passenger door. The parties stipulated these prints were appellant's.

*Appellant's Trial Testimony*

{¶18} Appellant testified on his own behalf at trial. He said he and Barnes drank at the "U-Bar" before leaving for the Cozy Corner, where they met up with Martin and Ricket. He said he and Martin wanted to leave for the "M.V.P." bar, but Ricket and Barnes were barred from the premises. The four left together, though, in Martin's rental car. Appellant said Martin and Ricket were "sniffing" something from a bag they passed back and forth to each other as they drove; appellant claimed it is common knowledge Martin "snorts pot."

{¶19} As they drove, appellant claimed Barnes asked Ricket where he could obtain low-cost cocaine, and Ricket said he was not able to get any but Martin could. Barnes purportedly responded that he would not accept it from Martin because Martin was known to always take some for himself, a remark which angered Martin. Barnes struck Martin inside the vehicle and Martin swerved. Appellant tried to prevent Barnes from hitting Martin again. Martin told appellant and Barnes to get out of the car, and appellant asked to be taken back to his own vehicle at another bar. When Barnes opened the car door to get out, Martin backed up and struck something. Barnes hit Martin again.

Martin and Barnes both jumped out of the car, and appellant also got out for the purpose of keeping them from fighting.

{¶20} Martin and Barnes ran off chasing one another. Appellant got back into the car with Ricket and the two drove around for a short time, looking for Martin and Barnes. Ricket said he couldn't drive so appellant dropped him off at his house. Appellant purportedly told Ricket to let Martin know appellant would leave the rental car near the U-Bar for him. Appellant said he parked the rental car on the dead-end street near the U-Bar because he didn't want to leave it at the bar with the keys in it

{¶21} Appellant denied seeing or possessing any firearms the night of the incident. He denied brandishing a firearm or threatening anyone. He said he never ordered Martin to get in the trunk and did not take money or anything else from Martin or Ricket. He insisted his only role was to attempt to stop Barnes and Martin from fighting, but Martin was high on cocaine and Barnes was high on Percocet.

{¶22} Upon cross examination, appellant admitted he told evolving stories to law enforcement but denied that he had come up with the fight story after reading appellee's discovery materials and realizing he needed to explain his fingerprints on the rental car. Appellant claimed that after the incident Ricket called and said Martin was claiming the two were robbed. Appellant then obtained the firearm from Barnes for "protection" and it just happened to be the same firearm Barnes had on the night of the incident. Appellant said he had no idea the gun had been fired that night.

*Indictment, Bench Trial, Conviction and Direct Appeal*

{¶23} Appellant was charged by indictment with one count of aggravated robbery in violation of R.C. 2911.01, two counts of kidnapping in violation of R.C. 2905.01, and

two counts of having a weapon under disability in violation of R.C. 2923.13. The aggravated robbery and kidnapping counts included firearm specifications. Appellant was charged along with a co-defendant, Daniel Barnes, III.

{¶24} A bench trial commenced on May 20, 2014. By decision filed May 22, 2014, the trial court found appellant guilty of the aggravated robbery count, the kidnapping counts, and the firearm specifications, and not guilty of the weapon counts. By entry filed July 16, 2014, the trial court sentenced appellant to an aggregate term of twenty-three years in prison.

{¶25} Appellant filed a direct appeal from his convictions and sentence, raising four assignments of error.  Appellant argued his convictions for aggravated robbery and kidnapping were against the manifest weight of the evidence and contrary to law; the trial court erred in failing to merge the two kidnapping convictions and in failing to merge count two and count one; he was denied the effective assistance of counsel; and the imposition of consecutive sentences was contrary to law.  *State v. Thornton*, 5th Dist. Muskingum No. CT2014-0035, 2015-Ohio-289.  We overruled each assignment of error, affirming the convictions and sentence.  Id.  A motion for delayed appeal to the Ohio Supreme Court was denied.  143 Ohio St.3d 1415, 2015-Ohio-2911, 34 N.E.3d 929.

*Ricket "Recants" and Dickinson Comes Forward*

{¶26} On April 29, 2016, appellant filed a pro se petition for post-conviction relief and motion for leave to file a motion for new trial.  Appellant's arguments arose from a deposition given on March 16, 2016 by James Ricket in connection with co-defendant

Barnes' motion for a new trial.[1]  The substance of Ricket's testimony was that no robbery occurred on June 8, 2013.  Instead, a fight occurred between Barnes and Martin which appellant tried to break up.  Although Ricket attempted to tell detectives the truth, they "threatened [him] with him 'either being a victim or a suspect,'" "harassing" him into corroborating Martin's testimony.  Appellant purportedly became aware of Ricket's deposition on April 20, 2016 and "was unavoidably prevented from discovering the new facts at the time of trial for reasons that Mr. Ricket had been keeping this new information to himself and it would have remained undiscovered until Mr. Ricket came forward with that information, thus [appellant] was unavoidably prevented from discovering this information until this time."  Appellant concluded no sufficient credible evidence supported restraint in the car, brandishing a gun inside the car, placing Martin in the trunk, and stealing Martin's rental car.

{¶27} Appellant also attached an affidavit sworn to and signed on April 13, 2016 by Kayla Dickinson, stating on June 8, 2013 she lived on Cliffwood and was outside on her porch smoking a cigarette when she saw four men get out of the car.  She recognized

---

[1] Barnes was charged by indictment with two counts of kidnapping; one count of aggravated robbery with a gun specification; one count of felonious assault with a gun specification; and one count of having weapons while under disability.  His case proceeded to trial by jury and he was found not guilty of the kidnapping counts but otherwise guilty as charged.  Barnes was sentenced to an aggregate prison term of 28 years.  Upon direct appeal, we affirmed Barnes' convictions but vacated his maximum consecutive sentences because the trial court did not make the requisite findings. *State v. Barnes,* 5th District Muskingum No. CT2015-0013, 2016-Ohio-1168, appeal not allowed, 146 Ohio St.3d 1430, 2016-Ohio-4606, 52 N.E.3d 1205.  Upon remand, the trial court re-imposed the aggregate term of 28 years.  Barnes appealed from the judgment entry of resentencing and we affirmed.  *State v. Barnes*, 5th Dist. Muskingum No. CT2016-0024, 2016-Ohio-8247.  Barnes apparently filed a motion for new trial on the same facts alleged here but the record is devoid of the court's ruling on that motion, other than the reference to overruling a "similar" motion in the co-defendant's case which will be noted infra.

two of the men as Martin and Barnes because she "knew both of them well." She heard escalating verbal argument and observed "they" were scuffling; the fighting escalated and "they" moved down Cliffwood. The affidavit states, "This looked like two grown men fighting. I then heard [Barnes] say "oh my god this nigger [*sic*] has a gun." She went back inside, convinced this was merely "a stupid mutual fight" between two grown men. "Later" she saw "they" claimed it was a robbery but she thought it was "no big deal" until she learned Barnes received a lengthy prison sentence, leading her to "reach out to [Barnes'] family on Facebook" and let them know it was a mutual fight.

{¶28} Appellee responded to appellant's motion on May 3, 2016 and appellant replied on May 16, 2016. By judgment entry dated July 25, 2016, the trial court overruled appellant's motion noting in pertinent part:

> * * * *.
>
> This Court has already considered a similar motion in the co-defendant's case based upon the same facts and has denied the same. This Court is denying this motion also. The Defendant's motion is based upon the perjured recanting of statements and sworn testimony given by a witness and a new witness who claims not to have known about the two trials and sentencings which were widely covered by the local media.
>
> The Court finds that even with this "evidence" the other evidence produced at trial; to wit: other witnesses, fingerprints, gun, ballistics evidence, photographs, and other physical evidence all lead the Court to finding [appellant] guilty.

* * * *.

{¶29} Appellant now appeals from the trial court's judgment entry of July 25, 2016 overruling his joint motion for leave to file a motion for new trial and petition for post-conviction relief.

{¶30} Appellant raises two assignments of error:

## ASSIGNMENTS OF ERROR

{¶31} "I.  THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION WHEN IT DENIED APPELLANT'S MOTION FOR LEAVE TO FILE A DELAYED MOTION FOR NEW TRIAL WITHOUT A[N] EVIDENTIARY HEARING."

{¶32} "II.  THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION WHEN IT DENIED APPELLANT'S POSTCONVICTION RELIEF PETITION WITHOUT A[N] EVIDENTIARY HEARING."

## ANALYSIS

{¶33} Appellant's two assignments of error are related and will be considered together.  Appellant argues the trial court should have granted leave to file a motion for new trial and should have granted his petition for post-conviction relief on the basis of the "new" evidence cited above.  We disagree.

{¶34} Both assignments of error depend on the premise that appellant was unavoidably prevented from discovery of certain facts and evidence, thus we will separately review the law applicable to petitions for post-conviction relief and motions for leave to file a motion for new trial.  See, *State v. Leyman*, 9th Dist. Medina No. 14CA0037-M, 2016-Ohio-59, appeal not allowed*,* 145 Ohio St.3d 1471, 2016-Ohio-3028, 49 N.E.3d 1314.

*Note on Arguments regarding Allegedly Suppressed "Criminal History"*

{¶35} The opinion infra addresses two of appellant's pieces of alleged newly-discovered evidence: Ricket's "recantation" and Dickinson's affidavit. We note appellant's argument repeatedly cites a third piece of alleged newly-discovered evidence:

> * * * *. Additionally, it was recently discovered that [appellee] also suppressed Mr. Martin's criminal record. [Appellant] had no knowledge that Mr. Martin possessed a criminal record prior to trial or during trial. [Appellant] did not discover this criminal record until April 20, 2016 when he received a copy of Attorney Kelley Donahue['s] motion for new trial on Mr. Barnes['] behalf.
>
> Brief, 10-11.

{¶36} We have reviewed the record for the cited evidence of Martin's (allegedly) suppressed criminal history and find none. Appellant attached Barnes' motion for new trial to his joint motion/petition in the trial court and that motion merely states: " * * * *. The State of Ohio also seems to have failed to disclose to Defense that the alleged victim in this matter was a drug dealer who actually made a drug drop during the course of events that evening, a possible Brady violation." (Underline in original).

{¶37} The trial court did not cite the alleged criminal history of Martin in its decision overruling appellant's joint motion and petition. We find the arguments on appeal premised upon Martin's alleged criminal history to be unsupported claims which are not supported by any affidavit or supporting documentation as required by R.C. 2953.21(A)(1)(a), describing the contents of a petition for post-conviction relief, or Crim.R.

33(C), pertaining to motions for new trial. We therefore decline to address the arguments related to Martin's alleged criminal history.

{¶38} We now turn to whether appellant has met the threshold requirement of establishing he was unavoidably prevented from discovering the evidence of Ricket's recantation and Dickinson's statement.

*Motion for Leave to File Motion for New Trial*

{¶39} Crim.R. 33 governs new trials. A motion for a new trial made pursuant to is addressed to the sound discretion of the trial court and may not be reversed unless we find an abuse of discretion. *State v. Schiebel,* 55 Ohio St.3d 71, 75, 564 N.E.2d 54 (1990). The decision whether to conduct an evidentiary hearing on a motion for leave to file a motion for new trial is also discretionary. *State v. Hoover–Moore*, 10th Dist. Franklin No. 14AP-1049, 2015-Ohio-4863, 50 N.E.3d 1010, at ¶ 14. An abuse of discretion implies that the trial court's judgment is arbitrary, unreasonable, or unconscionable. *State v. Sage,* 31 Ohio St.3d 173, 182, 510 N.E.2d 343 (1987).

{¶40} Crim.R. 33(B) provides that a motion for new trial based on newly discovered evidence must be filed

> * * * within one hundred twenty days after the day upon which the verdict was rendered. If it is made to appear by clear and convincing proof that the defendant was unavoidably prevented from the discovery of the evidence upon which he must rely, such motion shall be filed within seven days from an order of the court finding that he was unavoidably prevented from discovering the evidence within the one hundred twenty day period.

{¶41} The verdict in appellant's case was rendered on May 22, 2014 but appellant's motion was not filed until April 29, 2016. "Because appellant's motion was filed well outside the 120–day period, he was required to obtain leave of court to file his motion for new trial." *State v. Waddy*, 10th Dist. Franklin No. 15AP-397, 2016-Ohio-4911, --N.E.3d--, ¶ 17, citing *State v. Hoover–Moore,* supra, 2015-Ohio-4863 at ¶ 13. "To obtain such leave, the defendant must demonstrate by clear and convincing proof that he or she was unavoidably prevented from discovering the evidence within the 120 days." Id*.* A party is "unavoidably prevented" from filing a motion for a new trial if the party had no knowledge of the existence of the ground supporting the motion and could not have learned of that existence within the time prescribed for filing the motion in the exercise of reasonable diligence. Id., citing *State v. Walden,* 19 Ohio App.3d 141, 145–146, 483 N.E.2d 859 (10th Dist.1984).

{¶42} Appellant's proof must be more than conclusory allegations. "Clear and convincing proof that the defendant was 'unavoidably prevented' from filing 'requires more than a mere allegation that a defendant has been unavoidably prevented from discovering the evidence he seeks to introduce as support for a new trial.' " *State v. Lee,* 10th Dist. Franklin No. 05AP–229, 2005-Ohio-6374, 2005 WL 3220245, ¶ 9. The requirement of clear and convincing evidence puts the burden on the defendant to prove he was unavoidably prevented from discovering the evidence in a timely manner. *State v. Rodriguez–Baron,* 7th Dist. Mahoning No. 12–MA–44, 2012-Ohio-5360, 2012 WL 5863613, ¶ 11.

*Post-Conviction Relief*

{¶43} A petition for post-conviction relief is a means to reach constitutional issues that would otherwise be impossible to reach because the evidence supporting those issues is not contained in the record of the petitioner's criminal conviction. R.C. 2953.21(A)(1)(a) provides that "[a]ny person who has been convicted of a criminal offense * * * and who claims that there was such a denial or infringement of the person's rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United States, * * * may file a petition in the court that imposed sentence, stating the grounds for relief relied upon, and asking the court to vacate or set aside the judgment or sentence or to grant other appropriate relief." R.C. 2953.21 establishes procedures for filing a petition for post-conviction relief. A defendant's failure to either timely file a petition for post-conviction relief or to meet his burden under R.C. 2953.23(A)(1) deprives a trial court of jurisdiction to entertain the petition. R.C. 2953.21(A)(2); *State v. Kolvek,* 9th Dist. Summit Nos. 22966, 22967, 2006–Ohio–3113, ¶ 6–7.

{¶44} Although designed to address claimed constitutional violations, the post-conviction relief process is a civil collateral attack on a criminal judgment, not an appeal of that judgment. *State v. Calhoun,* 86 Ohio St.3d 279, 281, 714 N.E.2d 905 (1999); *State v. Steffen,* 70 Ohio St.3d 399, 410, 639 N.E.2d 67 (1994). A petition for post-conviction relief does not provide a petitioner a second opportunity to litigate his conviction, nor is the petitioner automatically entitled to an evidentiary hearing on the petition. *State v. Lewis,* 5th Dist. Stark No.2007CA00358, 2008–Ohio–3113, ¶ 8, citing *State v. Jackson,* 64 Ohio St.2d 107, 110, 413 N.E.2d 819(1980).

{¶45} Pursuant to R.C. 2953.21(A)(2), the petition shall be filed no later than three hundred sixty-five days after the date on which the trial transcript is filed in the court of appeals in the direct appeal of the judgment of conviction or adjudication. In the instant case, the transcript in appellant's direct appeal was filed October 2, 2014. Appellant's motion was filed April 29, 2016, some 575 days after the filing of the transcript. Because appellant's petition was untimely filed, the trial court was required to entertain the petition only if appellant could meet the requirements of R.C. 2953.23(A). A trial court may not entertain an untimely petition for post-conviction relief "unless the petitioner initially demonstrates * * * he was unavoidably prevented from discovering the facts necessary for the claim for relief[.]" *State v. Tolliver,* 10th Dist. Franklin No. 14AP–170, 2014-Ohio-4824, 2014 WL 5493878, ¶ 18; R.C. 2953.23(A)(1)(a).

*Appellant bears the burden of establishing he was unavoidably prevented from discovering the evidence cited in his joint motion and petition.*

{¶46} In his brief, appellant repeatedly states the trial court never "inquired" whether he was unavoidably prevented from discovering the evidence, thus "it may be assumed" he was unavoidably prevented from doing so. The burden, though, is appellant's, in the context of both the petition for post-conviction relief and the motion for leave to file a motion for new trial.

{¶47} "[I]n order to obtain relief pursuant to Crim.R. 33(B) or R.C. 2953.23, a movant/petitioner must satisfy the threshold requirement of unavoidable prevention." *State v. Waddy*, supra, 2016-Ohio-4911, at ¶ 27. "The phrase 'unavoidably prevented' in R.C. 2953.23(A)(1)(a) means that a defendant was unaware of those facts and was unable to learn of them through reasonable diligence." Id. at ¶ 28, citing *State v. Howard,* 10th Dist., 2016-Ohio-504, —— N.E.3d ——, ¶ 21. The "unavoidably prevented"

requirement in Crim.R. 33(B) mirrors the "unavoidably prevented" requirement in R.C. 2953.23(A)(1). Id., internal citation omitted. Here, there is no indication that appellant made any effort to obtain the evidence on which he now relies within the time limitations applicable to petitions for post-conviction relief or motions for a new trial. *State v. Leyman*, 9th Dist. Medina No. 14CA0037-M, 2016-Ohio-59, ¶ 14, appeal not allowed, 145 Ohio St.3d 1471, 2016-Ohio-3028, 49 N.E.3d 1314.

{¶48} Thus, the central inquiry in either appellant's motion for a new trial or his petition for post-conviction relief is whether the purported evidence offered by Ricket and Dickinson disclose newly-discovered evidence appellant was unavoidably prevented from obtaining. The "phrases 'unavoidably prevented' and 'clear and convincing proof' do not allow one to claim that evidence was undiscoverable simply because affidavits were not obtained sooner." *State v. Williams*, 12th Dist. Butler No. CA2003–01–001, 2003–Ohio–5873, ¶ 21.

{¶49} The trial court's ruling in this case does not include an explicit finding that appellant failed to demonstrate he was unavoidably prevented from discovering the evidence. Although Crim.R. 33(B) does indicate that the court must issue "an order * * * finding that he was unavoidably prevented from discovering the evidence within the one hundred twenty day period," there is no requirement, direct or implied, that a trial court explicitly find in its judgment that a defendant was not unavoidably prevented from discovering evidence. *State v. Mosley*, 10th Dist. Franklin No. 07AP-860, 2008-Ohio-951, ¶ 8, appeal not allowed, 118 Ohio St.3d 1509, 2008-Ohio-3369, 889 N.E.2d 1026. "Although the better practice would be for a trial court to give some explanation of the basis for its decision in order to aid appellate review, given the trial court's general denial

of appellant's motion for a delayed motion for new trial here, we must presume that the court found appellant had failed to demonstrate that he was unavoidably prevented from discovering the evidence relied upon in his motion." Id.

{¶50} Appellant has not offered any clear and convincing proof that he could not have learned of the existence of Ricket's recantation or Dickinson's statement within the time prescribed in the exercise of reasonable diligence.

{¶51} Regarding Ricket's affidavit and deposition testimony, "Nothing in those affidavits explains when or why [Ricket] decided to recant [his] trial testimony, whether appellant played a role in that decision, or whether and at what point appellant learned of [Ricket's] willingness to come forward with the new testimony." *State v. Peals*, 6th Dist. Lucas No. L-10-1035, 2010-Ohio-5893, ¶ 24. Appellee has filled in the backstory to Ricket's recantation in its brief, although none of this information is in the record.[2] The "deposition" transcript alone, without any affidavit from Ricket or appellant explaining the underlying circumstances of the recantation, does not establish a sufficient basis for us to find the trial court abused its discretion in overruling the joint motion and petition without a hearing. Id. at ¶¶ 26-27.

{¶52} Dickinson's statement presented by appellant also offers little evidence to establish that appellant was "unavoidably prevented" from discovering her statement within the time for filing a motion for new trial. The key issue is whether appellant knew or could have discovered through reasonable diligence within the time period provided under Crim.R. 33(B) that Dickinson had potentially relevant information. Dickinson's

---

[2] Appellee alleges Ricket's recantation was obtained by Barnes' counsel and his "paramour" via a "pretend legal proceeding" in which Ricket was "deposed" while rehabilitating in a respite health care facility from a gunshot wound.

affidavit states she knew both Barnes and Martin "well," and offers only a cursory explanation that she "heard" Barnes was convicted of serious charges thus she "reached out on Facebook" to Barnes' relatives.  If someone Barnes knew well lived so closely to the site of the alleged mutual fight, it remains unexplained why defense investigators on behalf of Barnes and appellant would not have sought out such a witness prior to trial. Appellant bears the burden of establishing, by clear and convincing evidence, that he was unavoidably prevented from discovering this evidence earlier. He has not shown, through the affidavits submitted, that Dickinson was unknown or "placed beyond the range of a reasonable investigation by the defense, much less beyond the Subpoena power." See, *Veliev v. Warden, Chillicothe Correctional Inst.*, S.D.Ohio No. 2:12-CV-00346, 2014 WL 4805292, *10.

{¶53} We are unconvinced Dickinson could not have been identified as a potential defense witness prior to trial. The reasonable diligence requirement of Crim.R. 33(A)(6) infers that an attorney will use reasonable efforts and reasonable foresight to procure evidence. *State v. Shepard,* 13 Ohio App.3d 117, 118, 468 N.E.2d 380 (2nd Dist.1983), citing *State v. Kiraly,* 56 Ohio App.2d 37, 51–54, 381 N.E.2d 649 (8th Dist.1977). An attorney must use reasonable diligence to secure newly discovered evidence within a reasonable time after the trial. Id*.*

{¶54} No hearing is required, and leave may be summarily denied, where neither the motion nor its supporting affidavits embody prima facie evidence of unavoidable delay. *State v. Baldwin*, 5th Dist. Stark No. 2013CA00134, 2014-Ohio-290, ¶ 24, citing *State v. Peals,* supra, 6th Dist. Lucas No. L–10–1035, 2010–Ohio–5893, ¶ 23; *State v. Clumm,* 4th Dist. Athens No. 08CA32, 2010–Ohio–342, ¶ 28; *State v. Bush,* 10th Dist.

Franklin No. 08AP–627, 2009–Ohio–441, ¶ 12; *State v. Parker,* 178 Ohio App.3d 574, 2008–Ohio–5178, ¶ 21 (2nd Dist.); *State v. Norman,* 10th Dist. Franklin No. 04AP–1312, 2005–Ohio–5087, ¶ 9. Affidavits filed outside of the 120–day time limit of Crim. R. 33 that fail to offer a sufficient explanation as to why evidence could not have been obtained sooner are inadequate to show that the movant was unavoidably prevented from obtaining the evidence within the prescribed time. *Ambartsoumov v. Warden, Chillicothe Correctional Inst.*, S.D.Ohio No. 2:12-CV-345, 2014 WL 4805384, *7, internal citations omitted.

{¶55} We find appellant failed to demonstrate why he could not have learned of Dickinson's purported knowledge of the crimes with reasonable diligence. Under Ohio law, "[e]vidence that merely contradicts the evidence presented at trial is not enough to constitute a new trial on the basis of 'newly discovered' evidence." *State v. Muntaser,* 8th Dist. Cuyahoga No. 84951, 2005–Ohio–1309, ¶ 10.

{¶56} Upon review, appellant failed to prove by clear and convincing evidence that he was unavoidably prevented from discovering, within the prescribed time period, the evidence he is relying on to support his motion and petition.

{¶57} Accordingly, the trial court did not abuse its discretion in denying appellant's motion for leave to file a delayed motion for new trial and petition for post-conviction relief. We further find that the trial court did not abuse its discretion in denying the motions without a hearing because the evidence, on its face, did not support appellant's claims that he was unavoidably prevented from timely discovery of the evidence. *State v. Davis,* 9th Dist. Lorain No. 12CA010256, 2013–Ohio–846, ¶ 12, internal citation omitted*.*

{¶58} Appellant's two assignments of error are thus overruled.

## CONCLUSION

{¶59} Appellant's two assignments of error are overruled and the judgment of the Muskingum County Court of Common Pleas is affirmed.

By:  Delaney, P.J. and

Wise, J.

Baldwin, J., concur.