[Cite as *State v. Chester*, 2025-Ohio-180.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. William B. Hoffman, P.J. |
| Plaintiff-Appellee | Hon. Craig R. Baldwin, J.<br>Hon. Andrew J. King, J. |
| -vs- | |
| | Case No. 2024CA00021 |
| TAVIST D. CHESTER | |
| Defendant-Appellant | O P I N I O N |


CHARACTER OF PROCEEDINGS: Appeal from the Stark County Court of Common Pleas, Case No. 2019CR0977B

JUDGMENT: Affirmed

DATE OF JUDGMENT ENTRY: January 22, 2025

APPEARANCES:

For Plaintiff-Appellee

DAVE YOST
Ohio Attorney General

ANDREA K. BOYD
Special Prosecuting Attorney
Assistant Attorney General
30 East Broad Street, 23rd Floor
Columbus, Ohio 43215

For Defendant-Appellant

G. MICHAEL GOINS
13609 Shaker Blvd., Suite 3-A
Cleveland, Ohio 44120

*Hoffman, P.J.*

**{¶1}** Defendant-appellant Tavist D. Chester appeals the February 8, 2024 Judgment Entry entered by the Stark County Court of Common Pleas, which denied his Motion for Leave to File Delayed Motion for New Trial. Plaintiff-appellee is the State of Ohio.

STATEMENT OF THE CASE AND FACTS

**{¶2}** On July 17, 2019, the Stark County Grand Jury indicted Appellant on one count of aggravated murder, in violation of R.C. 2903.01(A) (Count 1); one count of murder, in violation of R.C. 2903.02(A) and/or (B) (Count 2); and three (3) counts of felonious assault, in violation of R.C. 2903.11(A)(1) and/or (A)(2) (Counts 3, 4, and 5). Each count carried an attendant firearm specification, in violation of R.C. 2941.145. Appellant appeared before the trial court for arraignment on July 19, 2019, and entered a plea of not guilty to the Indictment.

**{¶3}** The matter proceeded to jury trial on January 6, 2020. The following evidence relevant to this appeal was presented at trial.[1]

**{¶4}** Officer Vincent Romanin with the Canton Police Department was dispatched to the R Bar on Wertz Avenue, Northwest, Canton, Stark County, Ohio, during the early morning hours of May 12, 2019, in response to a shooting casualty. When he arrived at the scene, Officer Raminin found a crowd outside, surrounding an unresponsive male, who was motionless on the ground. The multiple gun casings scattered around the parking lot as well as several parked cars with gunshot damage suggested a shootout.

---

[1] For a complete recitation of the evidence presented at trial, see this Court's Opinion in *State v. Chester*, 2021-Ohio-918 (5th Dist.).

{¶5} Video footage from the bar security camera showed a late-model Dodge Ram pickup truck pulling up to the bar. Officer Romanin recognized the pickup truck from an incident which occurred months earlier and involved an exchange of gunfire between vehicles on Interstate 77. Someone at the bar provided police with Appellant's name and Officer Romanin determined the pickup truck was associated with Appellant.

{¶6} Witness testimony established Appellant and his cousins had been at the bar for a short time when Nigel Jackson, unprovoked and without warning, punched Appellant in the head. Samuel "Franco" Jamerson, one of the bouncers, attempted to break up the ensuing fight between Appellant and Jackson. Jamerson grabbed Appellant and pulled him toward the exit, telling Appellant he had to leave. Appellant ran toward the parking lot with his cousins following after him. As Jamerson was dealing with Appellant, Jackson swung at Joshua Moore, the bar manager, and the two began to fight. Antonio Wallace approached with a gun in his hand and told Moore to "get the fuck off my boy." Moore instructed Jackson, Wallace, and their associate to leave, which they did after some "jawing." As Jackson, Wallace, and their associate exited the bar, Jamerson heard "boom, boom, boom" then saw Jackson slowly fall to the ground. Wallace raised his gun and fired back. Moore fired two shots into the air to scare people away from the area.

{¶7} Appellant testified on his own behalf. He recalled, in February, 2019, he was involved in an incident with Wallace at a different bar, the M Bar, which ended with someone shooting at his truck while he was traveling on Interstate 77 ("I-77"). Appellant stated, for several months following the incident, he received vague threats from others on behalf of Wallace, causing him to fear for his life. Appellant began to carry a gun while on his route as a mail carrier. He also kept an AK-47 hidden in his truck.

{¶8}   Appellant described the events of the evening of May 11, 2019. Prior to entering the R Bar, Appellant secreted a handgun on the top of a tire in the wheel well of his parked truck. Appellant indicated he believed Wallace was the individual who had punched him in the head. After being punched, he ran out of the bar and retrieved his hidden gun. Appellant ran back toward the parking lot of the bar. He claimed he saw Wallace aim a gun in his direction, so he raised his own gun and immediately began shooting. Appellant fled the scene on foot.

{¶9}   After hearing all the evidence and deliberating, the jury acquitted Appellant of Count 1, aggravated murder, but found him guilty of the remaining counts of murder and felonious assault. At the sentencing hearing on January 17, 2020, the trial court sentenced Appellant to an aggregate mandatory minimum prison term of 23 years to a maximum prison term of 24 years to life.   The trial court memorialized Appellant's convictions and sentence via Judgment Entry filed March 4, 2020.

{¶10}  On December 26, 2019, prior to the start of trial, the State filed a Notice of Intent to Use Other Acts Evidence and Motion in Limine. The State also provided Appellant with discovery relative to the February 3, 2019 incident between Appellant and Wallace at the M Bar.  A short time later, Appellant presented at Aultman Hospital with a gunshot wound which he alleged occurred when someone shot at his vehicle while he was traveling on I-77 South. The Canton Police Department investigated the shooting and recovered evidence from Appellant's truck. The evidence recovered revealed shots were fired from inside Appellant's truck to the outside and from outside his truck to the inside. Within 24 hours of the incident at the M Bar, someone fired a large number of rounds into Wallace's home. Canton Police interviewed Appellant about the incident at

the M Bar and the gunfire exchange on I-77. The information gathered by Canton Police and the prosecutor's office regarding those incidents was disclosed to Appellant and his attorney.

{¶11} In addition, the State provided Appellant with discovery regarding the State's ongoing investigation into the criminal gang, "Shorb Blocc," and Antonio Wallace's involvement in the gang. Appellant initially informed police he had no knowledge of Wallace's criminal history at the time he shot and killed Nigel Jackson. *Id.* at p. 3. The State added Appellant raised the issue of self-defense; therefore, testimony of prior specific acts of misconduct by the victims unrelated and unknown to Appellant at the time of the R Bar shooting were not relevant and inadmissible. *Id.* The trial court agreed with the State and ruled the prior unrelated bad acts the alleged victims in the case had committed or which had been investigated were inadmissible pursuant to Evid.R. 404(B).

{¶12} Appellant filed a timely Notice of Appeal to this Court, which affirmed his convictions and sentence. *State v. Chester*, 2021-Ohio-918 (5th Dist.). Appellant subsequently filed a motion to reopen his direct appeal, claiming appellate counsel was ineffective for failing to argue trial counsel was ineffective for failing to challenge the trial court instructing the jury Appellant had a duty to retreat. Via Judgment Entry filed October 13, 2021, this Court denied Appellant's application. The Ohio Supreme Court decline to accept review. *State v. Chester*, 2022-Ohio-85.

{¶13} On August 7, 2023, Appellant filed a Motion for Leave to File Delayed Motion for New Trial. The alleged newly discovered evidence upon which Appellant based his motion was (1) an October 21, 2022 correspondence from the United States Department of Justice, which informed Appellant he had been identified by law

enforcement as a victim or potential victim of the Shorb Blocc gang ("the DOJ letter") and (2) an indictment filed in the U.S. District Court for the Northern District of Ohio on August 11, 2021, charging sixteen (16) members of the Shorb Blocc gang with a racketeering conspiracy ("the federal indictment") as well as the docketing statement of that matter. Appellant stated he was unavoidably prevented from discovering the evidence within the statutory timeframe. Appellant argued "the newly discovered evidence attached hereto verifies that [he] was a victim of the Shorb Blocc gang and associates that terrorized the greater Canton area * * * [tracking back to] 2005." Motion for Leave to File Delayed Motion for New Trial pursuant to Criminal Rule 33(A)(6) at p. 6. Appellant explained he was the victim, not the aggressor in the incident at the R Bar. Appellant further asserted he is entitled to a new trial because the State "suppressed the ongoing criminal investigation [into] the notorious violent gang Shorb Blocc," in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). *Id.*

**{¶14}** The State countered "[t]he 'newly discovered' evidence here is not the DOJ letter itself, or even the indictment of the Shorb Blocc gang members, but rather the subject matter of those documents." State's Memorandum Contra Defendant's Motion for Leave to Filed Delayed Motion for New Trial pursuant to Criminal Rule 33(A)(6) at p. 9. The State explained the only new information contained in the DOJ letter and the federal indictment was the fact Appellant could possibly be a victim witness in the federal case. Appellant was aware of Wallace's gang affiliation at the time of trial as such information was provided to him in discovery. The State further argued Appellant failed to provide an explanation for the delay in filing his motion.

**{¶15}** Via Judgment Entry filed February 8, 2024, the trial court denied Appellant's Motion for Leave to File Delayed Motion for New Trial. The trial court found Appellant failed to establish, by clear and convincing evidence, he was unavoidably prevented from discovering the evidence upon which he intends to base his motion for new trial. The trial court further found the allegedly newly discovered evidence was information known to Appellant at the time of trial.

**{¶16}** It is from this judgment entry Appellant appeals, raising the following assignments of error:

I. THE TRIAL COURT ABUSED ITS DISCRETION AND VIOLATED APPELLANT'S DUE PROCESS RIGHTS, WHEN IT DENIED APPELLANT'S MOTION FOR LEAVE, FINDING APPELLANT FAILED TO SHOW BY CLEAR AND CONVINCING EVIDENCE HE WAS UNAVOIDABLY PREVENTED FROM DISCOVERING THE EVIDENCE THAT APPELLANT INTRODUCED IN HIS MOTION FOR NEW TRIAL, WHEN THE EVIDENCE ON ITS FACE DEMONSTRATED SUCH UNAVOIDABLENESS.

II. THE TRIAL COURT ABUSED ITS DISCRETION, WHEN IT DENIED APPELLANT'S MOTION FOR LEAVE TO FILE MOTION FOR NEW TRIAL WITHOUT CONDUCTING AN EVIDENTIARY HEARING AS APPELLANT SUBMITTED DOCUMENTATION THAT ON ITS FACE SUPPORTED APPELLANT'S CLAIM THAT HE WAS UNAVOIDABLY PREVENTED FROM DISCOVERING SAID EVIDENCE EARLIER.

I

{¶17}  In his first assignment of error, Appellant asserts the trial court abused its discretion and violated his rights to due process in denying his motion for leave to file delayed motion for new trial. We disagree.

{¶18}  A motion for a new trial pursuant to Crim.R. 33 is addressed to the sound discretion of the trial court. *State v. Schiebel*, 55 Ohio St.3d 71 (1990). It is also within the discretion of the trial court to determine whether a motion for a new trial and the material submitted with the motion warrants an evidentiary hearing. *State v. Hill,* 1992-Ohio-43. The term "abuse of discretion" connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. (Citations omitted.) *State v. Adams,* 62 Ohio St.2d 151, 157 (1980).

{¶19}  Crim.R. 33(B) provides a motion for new trial based on newly discovered evidence must be filed:

[W]ithin one hundred twenty days after the day upon which the verdict was rendered. If it is made to appear by clear and convincing proof that the defendant was unavoidably prevented from the discovery of the evidence upon which he must rely, such motion shall be filed within seven days from an order of the court finding that he was unavoidably prevented from discovering the evidence within the one hundred twenty day period.

{¶20}  The verdict in Appellant's case was rendered on January 14, 2020, but he did not file his motion until August 7, 2023.  "Because appellant's motion was filed well

outside the 120-day period, he was required to obtain leave of court to file his motion for new trial." *State v. Waddy*, 2016-Ohio-4911, ¶17 (10th Dist.). To obtain such leave, the defendant must demonstrate by clear and convincing proof that he or she was unavoidably prevented from discerning the evidence within the 120 days. *Id.* A party is "unavoidably prevented" from filing a motion for a new trial if they had no knowledge of the ground supporting the motion and could not have learned of the existence of that ground within the time prescribed for filing the motion in the exercise of reasonable diligence." *Id.* quoting *State v. Walden*, 19 Ohio App.3d 141, 145-146 (10th Dist. 1984).

**{¶21}** Appellant's proof must be more than conclusory allegations. "Clear and convincing proof that the defendant was 'unavoidably prevented' from filing 'requires more than a mere allegation that a defendant has been unavoidably prevented from discovering the evidence he seeks to introduce as support for a new trial.' " *State v. Lee*, 2005-Ohio-6374, ¶9 (10th Dist.). The requirement of clear and convincing evidence puts the burden on the defendant to prove he was unavoidably prevented from discovering the evidence in a timely manner. *State v. Rodriguez-Baron*, 2012-Ohio-5360, ¶11 (7th Dist.). Clear and convincing proof is that "which will produce in the mind of the trier of facts a firm belief of conviction as to the facts sought to be established." *Schiebel,* 55 Ohio St.3d at 74.

**{¶22}** The "unavoidably prevented" requirement in Crim.R. 33 mirrors the "unavoidably prevented" requirement in R.C. 2953.23. *State v. Thornton*, 2017-Ohio-637, ¶ 47 (5th Dist.). "The phrase 'unavoidably prevented' means that a defendant was both unaware of the facts and was unable to learn of them through reasonable diligence." *Id.*

**{¶23}** Thus, the central inquiry in Appellant's motion for leave to file a motion for a new trial is whether he was unaware of the facts disclosed by the evidence and whether

he was unavoidably prevented from obtaining that information through reasonable diligence. We answer both parts of this inquiry in the negative.

**{¶24}** We find Appellant was aware of the facts disclosed by the evidence. In his motion for leave to file delayed motion for new trial, Appellant asserted, "It is very important to note that the newly discovered evidence/information is very, very significant and impactful on the issue that [Appellant] now brings before this Honorable Court." *Id.* at p. 2. Appellant continues, "from the very beginning [he] asserted that he was a victim of the acts of physical violence involving assaults, intimidation, and threats including being a victim of a shooting incident from the organization (gang) that is known as 'Shorb Blocc' and/or associates thereof and therefore, [Appellant] was in fear for his life during the attack * * * at the R Bar." *Id.* The basis for Appellant's motion was the fact he was the victim of the Shorb Blocc gang and feared for his life.

**{¶25}** During the initial investigation, Appellant told police he did not know anything about Wallace or his criminal history at the time of the shooting. Accordingly, Wallace's involvement in the Shorb Blocc gang could not have had a bearing on Appellant's decision to shoot Jackson. Nonetheless, during discovery, the State disclosed to Appellant information regarding Wallace's involvement in the Shorb Blocc gang. In addition, the State provided Appellant with discovery regarding the State's ongoing investigation into the criminal activity of the Shorb Blocc gang. At trial, Appellant testified he feared for his life due to being victimized by Wallace and his associates following the February, 2019 shooting incident on I-77, and he began to carry a gun on his person while he worked and kept an AK-47 in his truck.

{¶26} The newly discovered evidence upon which Appellant supported his motion was (1) an October 21, 2022 correspondence from the DOJ, which identified Appellant as a victim or potential victim of the Shorb Blocc gang and (2) the federal indictment against sixteen (16) members of the Shorb Blocc gang filed the Northern District of Ohio on August 11, 2021. The letter from the DOJ and the federal Indictment were newer documents, however, the general information contained therein relative to the Shorb Blocc gang was not new evidence. "The test for newly discovered evidence for a new trial motion is not merely 'newly available' evidence." (Citation omitted.) *State v. Johnson*, 2023-Ohio-918, ¶ 34 (7th Dist.). The "evidence" contained in the DOJ correspondence and the federal indictment does not change what Appellant knew at the time of the trial or how he presented his claim of self-defense.

{¶27} We further find Appellant has failed to establish, by clear and convincing evidence, he was unavoidably prevented from discovering the evidence upon which he seeks to base his motion for new trial. Although the correspondence from DOJ is dated October 21, 2022, and the federal indictment was filed on August 11, 2021, beyond the 120-day requirement of Crim.R. 33, as discussed supra, the general information set forth therein was known to Appellant at the time of trial. Furthermore, with respect to the federal indictment, "[a] court's docket is public record." (Citation omitted.) *State v. Johnson*, 2022-Ohio-78, ¶ 24 (8th Dist.). "[I]f something is stored within the public record, a defendant cannot be unavoidably prevented from discovering it." (Citation omitted) *Id.* We recognize Appellant is incarcerated and acknowledge the logistical difficulties for inmates in investigating and obtaining legal representation. *State v. Miller*, 2022-Ohio-378, ¶ 5 (8th Dist.). However, Appellant does not attest to the circumstances relating to his late

discovery other than the dates associated with the evidence. Once Appellant became aware of the evidence, "caselaw dictates that it is incumbent upon him to act within a reasonable time period." *State v. McConnell*, 2011-Ohio-5555, ¶ 18 (2nd Dist.). He failed to do so.

**{¶28}** Based upon the foregoing, Appellant's first assignment of error is overruled.

II

**{¶29}** In his second assignment of error, Appellant contends the trial court abused its discretion in denying his motion for leave to file a motion for new trial without conducting an evidentiary hearing.

**{¶30}** "The decision whether to grant or hold an evidentiary hearing on a defendant's request for leave to file a delayed motion for new trial falls within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of that discretion." (Citation omitted.) *State v. Hill,* 2015-Ohio-1652, ¶ 16 (8th Dist.).

**{¶31}** Appellant argues a defendant is entitled to a hearing on his motion for leave when he "submits documents that on their face support his claim of being unavoidably prevented from meeting Crim.R. 33's time requirements." (Citation omitted) *State v. Hiler*, 2017-Ohio-7636, ¶ 12 (2nd Dist.).  Having found, supra, Appellant failed to establish, by clear and convincing evidence, he was unavoidably prevented from discovering the evidence upon which he intends to base his motion for new trial, we find the trial court was not required to hold a hearing and did not abuse its discretion in not doing so.

**{¶32}** Within this assignment of error, Appellant also asserts "the trial court should have given a detail [sic] finding of facts and conclusions of law that addresses the impact of the newly discovered evidence." Brief of Appellant at pp. 15-16. "[A] trial court is not

required to issue findings of fact and conclusions of law when denying without a hearing a motion for leave to file a delayed motion for new trial." *State v. Briscoe*, 2021-Ohio-4317, ¶ 27 (8th Dist.). We find the trial court's judgment entry clearly and succinctly provided a thorough analysis to support its decision.

**{¶33}** Appellant's second assignment of error is overruled.

**{¶34}** The judgment of the Stark County Court of Common Pleas is affirmed.


By: Hoffman, P.J.

Baldwin, J. and

King, J. concur