[Cite as *State v. Roberts*, 2022-Ohio-844.]

COURT OF APPEALS
GUERNSEY COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| STATE OF OHIO | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. William B. Hoffman, J. |
| Plaintiff-Appellee | : | Hon. John W. Wise, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 21-CA000018 |
| CLARENCE D. ROBERTS | : |  |
|  | : |  |
| Defendant-Appellant | : | OPINION |

CHARACTER OF PROCEEDING:      Criminal appeal from the Guernsey County
Court of Common Pleas, Case No. 97-63

JUDGMENT:      Affirmed

DATE OF JUDGMENT ENTRY:      March 17, 2022

APPEARANCES:

For Plaintiff-Appellee                         For Defendant-Appellant

JOEL BLUE                                     CLARENCE ROBERTS PRO SE
Prosecuting Attorney                     No. 351-300
BY: Jason R. Farley                      Allen Corectional Institution
Assistant Prosecutor                    Box 4501
409 Wheeling Avenue                  Lima, OH 45802
Cambridge, OH 43725

*Gwin, P.J.*

{¶1}   Defendant-appellant Clarence (Skip) Roberts appeals the June 22, 2021 judgment of the Guernsey County Common Pleas Court overruling his motion for leave to file a motion for a new trial.

*Facts and Procedural History*

{¶2}   The facts and procedural history were summarized by this Court in *State v. Roberts*, 5th Dist.  Guernsey No. 97 CA 29, 1999 WL 3956(Nov. 24, 1998) as follows.

{¶3}   On June 30, 1997, the Guernsey County Grand Jury indicted appellant on one count of aggravated robbery, in violation of R.C. 2911.01, and one count of aggravated murder, in violation of R.C. 2903.01, with a death penalty specification.  The charges arose out of the robbery and stabbing death of Leo Sinnett on May 17, 1997.  The matter proceeded to trial by jury on September 15, 1997.  The following evidence was adduced at trial.

{¶4}   On May 15, 1997, appellant, Albert "Chip" Andrews, John LaFollette, and Mia Willey traveled to Zanesville, Ohio, in appellant's white 1986 Oldsmobile Cutlas Cierra on a "drug buy."  Appellant and Andrews purchased $100.00 worth of crack cocaine from "a black guy in Zanesville" with money borrowed from Willey.  After smoking the crack, appellant and Andrews returned to the dealer's house in order to get their money back because they were not satisfied with the quality of the drugs.  The dealer refused to offer a money back guarantee and the group's discussion focused on where to obtain money to buy more drugs.  Andrews stated he knew somebody the group could rob.  When Andrews mentioned Leo Sinnett's name, appellant suggested foregoing the robbing of Sinnett and proceeding to kill him

{¶5} On May 17, 1997, the group reconvened at Willey's house. Appellant and Andrews left to purchase beer and cigarettes. When they returned, appellant and Andrews asked LaFollette if he wanted to go for a drive. Andrews drove appellant's vehicle; appellant sat in the front passenger's seat; and LaFollette positioned himself in the back seat. Andrews drove to 12225 Lincoln Street, Buffalo, Ohio, Sinnett's residence. Appellant and LaFollette exited the car. Andrews remained in the vehicle. LaFollette walked to the front of the house to inspect some trees he had arranged to remove for Sinnett. As appellant exited the front door of Sinnett's residence, he told LaFollette, "There's no need in talking to him, he's dead." The two returned to the vehicle and the trio left the scene.

{¶6} At 6:49 p.m. on the same evening, Sergeant Brian Vierstra of the Ohio State Highway Patrol observed a white Oldsmobile traveling westbound out of Buffalo on State Route 313, just past the I–77 bypass. As the vehicle approached, Sergeant Vierstra noticed the car did not have any visible front registration. When the vehicle traveled past, the officer did not observe any visible rear registration. Thereafter, Sergeant Vierstra activated his lights and pursued the vehicle, which continued westbound until the driver entered a private driveway. The driver and right front passenger exited the vehicle. The officer ordered the passenger back into the vehicle and instructed the driver to walk to the back of the car. Sergeant Vierstra observed a third male in the back seat of the vehicle.

{¶7} As the officer spoke with the driver, who was identified as Andrews, Sergeant Vierstra found him to be under the influence of alcohol. When Andrews refused to submit to field sobriety tests, the officer placed him under arrest. Shortly thereafter, Trooper Stolarick arrived at the scene.

{¶8}    The two officers spoke with appellant, who was covered in blood from his waist to his knees.  Trooper Stolarick asked appellant about the blood.  Appellant informed the officers he had just processed a road kill deer.  When the officers advised appellant the vehicle would be impounded, appellant told them he had a knife on his person.  Sergeant Vierstra described the weapon as a four-inch, double-edged knife with a black handle contained in a leather sheath.

{¶9}    As the officers spoke with appellant, LaFollette exited the vehicle and walked directly into a nearby residence.  The officers did not observe any blood on his clothing or his person.  Jim Tuttle, the owner of the house, appeared and offered to allow appellant and LaFollette to stay with him.  Thereafter, Sergeant Vierstra transported Andrews to the station, while Trooper Stolarick waited for the tow truck to impound appellant's vehicle.

{¶10}   After leaving the scene, Trooper Stolarick contacted Deputy Masters of the Cambridge Sheriff's Department to inform the deputy he (Trooper Stolarick) was assisting that evening in overseeing the Meadowbrook High School prom goers.  During their conversation, Deputy Masters received a call from his dispatcher advising of the discovery of a body.  Deputy Masters and Trooper Stolarick proceeded to the Sinnett residence.  Upon their arrival, the officers learned of Sinnett's stabbing death.  The Trooper recalled the traffic stop he and Sergeant Vierstra made earlier that evening.  Deputy Masters, Trooper Stolarick and two other deputies did not locate anyone upon their return to the Tuttle residence.

{¶11} The following day, appellant was arrested. LaFollette fled to Pennsylvania where he was arrested approximately one month after the incident. Andrew, LaFollette, and Willey were named as co-defendants.

{¶12} Special Agent Mike Kopfer of the Bureau of Criminal Identification assisted in the investigation of Sinnett's homicide. During his investigation, Agent Kopfer found bloodstains on the front passenger's seat of the white Oldsmobile. The agent did not observe any other bloodstains in the vehicle. Margaret Saupe, a forensic scientist with the Bureau of Criminal Identification, also examined the Oldsmobile and observed bloodstains on the front passenger's seat. A DNA analysis of the blood sample indicated the blood was that of the victim. Saupe's analysis of Andrews' personal belongings, which were recovered during the investigation, revealed no traces of blood.

{¶13} After LaFollette's arrest in Pennsylvania, he gave two taped statements to the Guernsey County Sheriff's Department. LaFollette's first statement was given to Detective Ron Pollock on June 18, 1997. The second was given to Detective Pollock and Detective John Davis on June 25, 1997.

{¶14} At trial, appellant called LaFollette as a witness. Due to LaFollette's alignment with the state, the trial court permitted both parties latitude in their examinations of LaFollette. Attorney Tingle, appellant's trial counsel, attempted to impeach LaFollette with his prior statements. However, the trial court found the statements were not inconsistent with the witness' trial testimony and would not allow Attorney Tingle to make further inquiry into the statements LaFollette made to police. The statements were proffered into evidence.

{¶15}   After hearing all the evidence and deliberations, the jury found appellant guilty of aggravated robbery and aggravated murder.  The jury did not recommend the death sentence.  Via Judgment of Conviction dated October 6, 1997, the trial court memorialized the jury's verdicts.  Via Judgment Entry of Sentence dated November 4, 1997, the trial court sentenced appellant to life imprisonment without parole for the offense of aggravated murder and a term of ten years for the offense of aggravated robbery.  The trial court ordered the sentences to run consecutively.

{¶16}   Appellant filed a direct appeal to this Court.  This Court affirmed the trial court.  *See State v. Roberts*, 5th Dist.  Guernsey No. 97 CA 29, 1999 WL 3956(Nov. 24, 1998).

{¶17}   After unsuccessfully appealing his case in the Ohio state courts, Roberts filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254 in the United States District Court for the Southern District of Ohio.  The district court denied the writ.  The Sixth Circuit Court of Appeals granted Roberts a certificate of appealability with respect to the following claims: (1) whether Roberts was deprived of a fair trial, a trial by jury, and due process when the trial court ordered that alternate jurors be present during deliberations; and (2) whether Roberts was deprived of the effective assistance of appellate counsel when his appellate counsel failed to raise as error the trial court's order that alternate jurors be present during deliberations. The court affirmed the district court's denial of Roberts' petition.  *Roberts v. Carter*, 337 F.3d 609(6th Cir. 2003).  The United States Supreme Court denied appellant's writ of Certiorari. *Roberts v. Carter*, 540 U.S. 1151, 124 S.Ct. 1150 (2004)

{¶18} On October 1, 2004, appellant filed an application for DNA testing. The Guernsey County Prosecuting Attorney filed a report regarding the existence of biological material available for DNA testing on December 5, 2004. On April 6, 2005, appellant was appointed counsel to pursue his application for DNA testing. The trial court denied appellant's request on December 14, 2005, concluding that: 1). R.C. 2953.74(C)(1) had been satisfied in that biological material was collected from the crime scene or the victim of the offense and that the material is still in existence; 2). R.C. 2953.74(C)(2)(a) was not satisfied as the testimony at appellant's trial indicated that the sample of biological material does not contain sufficient material to be extracted for a test sample; and 3). Even if there were sufficient biological material to perform DNA testing the results would not be outcome determinative because no fingerprint or hair was attributed to appellant during his trial and the testimony of the witnesses was sufficient to convict appellant even if he were excluded as the source of the hair or fingerprint. This Court affirmed. *State v. Roberts,* 5th Dist. Guernsey No. 2006–CA–02, 2006–Ohio–5018.

{¶19} On May 16, 2005, appellant filed a pro se Motion to Vacate and Reconstruct Sentence pursuant to *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621(2005), and *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403(2004). The trial court denied appellant's motion. In response to appellant's request for findings of fact and conclusions of law, the trial court issued those findings and conclusions on August 17, 2005. The trial court concluded that neither of Mr. Roberts' sentences exceeded the statutory maximum, and that Blakely "did not deal with the issue of consecutive sentences for multiple convictions." *Judgment Entry* filed August 17, 2005, at 2.

{¶20}  Appellant filed his appeal from the denial of his Petition to Vacate or Reconstruct Sentence.  This court affirmed the trial court's decision.  *See, State v. Roberts*, 5th Dist. No.2005–CA–26, 2006–Ohio–782.

{¶21}  On March 26, 2007, Roberts filed a Motion for Records, Documents, and Discovery Materials in the Guernsey County Common Pleas Court.  On May 2, 2007, the Guernsey County Common Pleas Court granted in part and denied in part appellant's Motion with respect to the Guernsey County Prosecutor's Office.  In that entry, the Court ordered the State of Ohio to disclose all relevant discovery that does not constitute attorney work product.

{¶22}  On May 31, 2007, pursuant to the order of the Guernsey County Common Pleas Court, the Guernsey County Prosecutor's Office sent two hundred and four pages of discovery to the appellant.  On June 4, 2007, appellant filed a Motion to Compel stating that the Prosecutor's Office did not comply with the Court Order of May 2, 2007.  On June 19, 2007, appellant filed a "Motion to Supplement the Record," requesting the "Court to supplement the motions to compel now pending before [the trial court] and scheduled for a non-oral hearing on June 19, 2007."  On June 19, 2007, the Guernsey County Common Pleas Court denied appellant's Motion to Compel with respect to the Guernsey County Prosecutor's Office stating that the discovery was provided.  On July 13, 2007, the trial court found appellant's "motion to supplement the record" moot as the Court had previously denied appellant's motion to compel stating that the discovery was provided. This Court affirmed the trial court.  *State v. Roberts*, 5th Dist. Guernsey No. 2007–CA–33, 2008–Ohio–3115.

{¶23}   On July 18, 2008, appellant filed a pro se motion for leave to file a new trial motion.  The court granted leave to file a motion for new trial on October 27, 2008, and appointed counsel.  The pro se motion was filed on October 28, 2008, and supplemented by counsel on February 23, 2009.  The motion alleged that appellant's counsel had a conflict of interest.  The pro se motion further noted that Roberts had copies of the Andrew's sentencing hearing.  *See, Motion for New Trail Rule 33*, filed Oct. 27, 2008 at 14-15 [Docket Number 202].  In his motion, Roberts noted,

> Additionally, Defendant Roberts learned that Co-Defendant Andrews testified at his sentencing hearing that Co-Defendant John LaFollette was in possession of the victim's wallet in the back seat of the car....

*Motion for New Trail Rule 33*, filed Oct. 27, 2008 at 23-24.  Roberts attached to his motion for a new trial portions of the transcript of Andrews' sentencing hearing held November 4, 1997 as Exhibit "C."  Further as newly discovered evidence attached to the motion was an affidavit of Dillon Sargent, an inmate at the Lebanon Correctional Institution.  *See, State v. Roberts,* 5th Dist. Guernsey No 09 CA 11, 2010-Ohio-2935, ¶23.

{¶24}   The court overruled the motion for new trial on March 20, 2009, finding that there was not sufficient evidence that an actual conflict of interest existed on the part of Attorney Tingle, as his representations ended prior to the murder of Leo Sinnett.  The court further found that Attorney Biegler did not represent the Children's Services Board at the time of trial, but did represent the Guernsey County Child Support Enforcement Agency on a contract basis in paternity matters.  The court found no demonstration of a conflict of interest on the part of Biegler.  The court found that the affidavit of Sargent

served merely to impeach or contradict prior evidence and thus was not sufficient grounds for a new trial. The trial court additionally found,

> The Court finds that Defendant argues the testimony of Albert "Chip" Andrews at his sentencing hearing places co-defendant John LaFollette inside the Sinnet [sic.] residence and advised the Court LaFollette had the victim's wallet. However, the Court finds that this "newly discovered evidence" does not disclose a strong probability that it will change the result if a new trial is granted and merely impeached and contradicts the former evidence. See, *Ohio v. Perry,* 148 Ohio St. 505.

*Entry,* filed Mar 20, 2009, at 1. [Docket Number 212]. We affirmed the trial court's decision. *See, State v. Roberts,* 5th Dist. Guernsey No. 09 CA 11, 2010-Ohio-2935.

{¶25} On April 19, 2021, Roberts filed five motions: 1), Motion for leave to file a motion for a new trial, 2). Motion to appoint counsel, 3). Motion to proceed as indigent; 4). A Motion for an Evidentiary Hearing and 5). Motion for a new trial.

{¶26} Roberts submitted the affidavit of co-defendant Albert "Chip" Andrews in support of his motions. Andrews was the driver of the car on the night Stinnett was stabbed to death. Roberts argued that he recently obtained this affidavit. Roberts contended that the affidavit contained exculpatory evidence that was known to and withheld by the state.

{¶27} By Order filed June 22, 2021, the trial court denied Roberts' motion for an evidentiary hearing, motion for a new trial and motion to appoint counsel.

*Assignments of Error*

{¶28} Roberts, pro se, raises Two Assignments of Error,

{¶29} "I. THE TRIAL COURT ERRED AS A MATTER OF LAW AND ABUSED ITS DISCRETION IN FAILING TO CONDUCT A HEARING TO DETERMINE WHETHER APPELLANT WAS UNAVOIDABLY PREVENTED FROM OBTAINING THE NEWLY DISCOVERED EVIDENCE UPON WHICH HIS PROPOSED MOTION FOR NEW TRIAL RELIES WITHIN 120 DAYS OF THE VERDICT.

{¶30} "II. THE TRIAL COURT ERRED AS A MATTER OF LAW AND ABUSED ITS DISCRETION IN ERRONEOUSLY DETERMINING THAT APPELLANT WAS NOT UNAVOIDABLY PREVENTED FROM OBTAINING THE NEWLY DISCOVERED EVIDENCE UPON WHICH HIS PROPOSED MOTION FOR A NEW TRIAL RELIES WITHIN 120 DAYS OF THE VERDICT."

I & II

{¶31} In his two assignments of error, Roberts argues that the trial court abused its discretion in overruling his motion for leave to file a motion for a new trial without first conducting an evidentiary hearing.

**Standard of Appellate Review – Motion for a New Trial filed beyond**

**120 days of the verdict**

{¶32} The decision whether to grant a new trial on grounds of newly discovered evidence falls within the sound discretion of the trial court. *State v. Hawkins*, 66 Ohio St.3d at 350, 612 N.E.2d 1227. We cannot reverse unless there has been a gross abuse of that discretion, and whether that discretion has been abused must be disclosed from the entire record. *State v. Petro,* 148 Ohio St. at 507- 508, 76 N.E.2d 370, q*uoting State v. Lopa*, 96 Ohio St. 410, 411, 117 N.E. 319(1917).

{¶33}  "The question of whether to decide a motion on the supporting evidence filed with the motion or to hold an evidentiary hearing is within the discretion of the trial court."  *United States v. O'Dell*, 805 F.2d 637, 643 (6th Cir.1986); *State v. Sutton*, 2016-Ohio-7612, 73 N.E.3d 981, ¶ 13 (8th Dist.); *State v. Shuster,* 5th Dist. Morgan No. 18AP0007, 2019-Ohio-4233, ¶9.

{¶34}  A review under the abuse-of-discretion standard is a deferential review.  "It is not sufficient for an appellate court to determine that a trial court abused its discretion simply because the appellate court might not have reached the same conclusion or is, itself, less persuaded by the trial court's reasoning process than by the countervailing arguments."  *State v. Morris*, 132 Ohio St.3d 337, 2012-Ohio-2407, ¶ 14, *citing AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161 (1990).

**Issue for Appellate Review:** *Whether the trial court abused its discretion in denying Roberts motion for a new trial without a hearing*

{¶35}  Roberts premised his motion for new trial on newly discovered evidence that he alleges demonstrated misconduct on the part of the prosecution.  Crim.R. 33 provides, in pertinent part:

(A) Grounds. A new trial may be granted on the motion of the defendant for any of the following causes affecting materially his substantial rights:

* * *

(2) Misconduct of the jury, prosecuting attorney, or the witnesses for the state;

* * *

(6) When new evidence material to the defense is discovered which the defendant could not with reasonable diligence have discovered and produced at the trial.

* * *

(B) Motion for new trial; form, time.

Application for a new trial shall be made by motion which, except for the cause of newly discovered evidence, shall be filed within fourteen days after the verdict was rendered, or the decision of the court where a trial by jury has been waived, unless it is made to appear by clear and convincing proof that the defendant was unavoidably prevented from filing his motion for a new trial, in which case the motion shall be filed within seven days from the order of the court finding that the defendant was unavoidably prevented from filing such motion within the time provided herein.

Motions for new trial on account of newly discovered evidence shall be filed within one hundred twenty days after the day upon which the verdict was rendered, or the decision of the court where trial by jury has been waived.  If it is made to appear by clear and convincing proof that the defendant was unavoidably prevented from the discovery of the evidence upon which he must rely, such motion shall be filed within seven days from an order of the court finding that he was unavoidably prevented from discovering the evidence within the one hundred twenty-day period.

{¶36} Thus, Crim.R. 33(B) contemplates a two-step procedure when a defendant seeks to file a motion for new trial outside either the 14-day deadline for motions filed under Crim.R. 33(A)(2) or the 120-day deadline for motions filed under Crim.R. 33(A)(6). *State v. Hawk,* 10th Dist. Franklin No. 21AP-265, 2021-Ohio-4533, ¶13. In *Hawk,* the Court noted,

> In the first step, the defendant must demonstrate that he was unavoidably prevented from discovering the evidence relied upon to support the motion for new trial. *State v. Bethel*, 10th Dist. No. 09AP-924, 2010-Ohio-3837, ¶ 13; *State v. Gaven,* 10th Dist. No. 16AP-645, 2017-Ohio-5524, ¶ 13, 17. In the second step, if the trial court finds unavoidable prevention by clear and convincing evidence, then the defendant must file the motion for new trial within seven days from the trial court's order. *Bethel* at ¶ 13; *Gaven* at ¶ 13, 17.

2021-Ohio-4533, ¶13.

{¶37} "The phrase 'unavoidably prevented' means that a defendant was unaware of those facts and was unable to learn of them through reasonable diligence." S*tate v. Thorton,* 5th Dist. Muskingum No. CT2016-0041, 2017-Ohio-637, ¶41. In determining whether a defendant has exercised reasonable diligence, courts have held "the defendant must describe all investigative actions undertaken within the 120-day period for timely filing a Crim.R. 33(A)(6) motion and explain why he was unavoidably prevented from discovering the evidence before the 120-day period elapsed." *State v. Cashin,* 10th Dist. Franklin No. 17AP-338, 2017-Ohio-9289, ¶17 (citations omitted). "Mere conclusory allegations do not prove that the defendant was unavoidably prevented from discovering

the evidence he seeks to introduce as support for a new trial." *Cashin*, ¶ 17, (citations omitted).

{¶38} In order to warrant the granting of a motion for new trial in a criminal case based on newly discovered evidence, the defendant must show that the new evidence "(1) discloses a strong probability that it will change the result if a new trial is granted, (2) has been discovered since the trial, (3) is such as could not in the exercise of due diligence have been discovered before the trial, (4) is material to the issues, (5) is not merely cumulative to former evidence, and (6) does not merely impeach or contradict the former evidence." *State v. Petro*, 148 Ohio St. 505, 76 N.E.2d 370(1947).

*Roberts fails to first establish, pursuant to Crim.R. 33(B), that he was unavoidably prevented from discovering the evidence of Albert "Chip" Andrews's statements.*

{¶39} Roberts argues that he received the affidavit from Andrews on or about February 11, 2020. In his affidavit, Andrews states that within minutes of leaving Stinnett's residence he heard Roberts ask co-defendant LaFollette, "How did you do?" He further heard LaFollette respond that he was able to get "fifty." When he looked in the backseat, Andrews claims that he saw LaFollette with "wallet and money belonging to Leo Stinnett." Andrews averred that he related these facts in open court at his plea hearing on or about November 4, 1997. Roberts claims the state withheld this "exculpatory" evidence.

{¶40} As noted above, Roberts was in possession of the sentencing transcript of Andrews at the time he filed his previous motion for a new trial on October 27, 2008. The trial court ruled that Andrews' statements were not

exculpatory but merely, impeached and contradicted the former evidence. The affidavit Roberts submits in support of his motion for leave to file a motion for a new trial on April 19, 2021 contains no new evidence or statements. Further, we note that the sentencing hearing transcript of Andrews suggests that he was asleep and he did not state that he observed who went into or came out of Sinnett's residence. LaFollette's possession of Sinnett's wallet would not be inconsistent with Roberts' guilt or in any way explain Roberts' possession of a knife during the traffic stop, the blood on the front seat of the car, or the blood on Roberts's hands as observed by the officers during the traffic stop. Put simply, the affidavit does not contain "newly discovered evidence" as contemplated by CrimR. 33(A)(6).

{¶41} As a further matter, we consider the application of res judicata to this case. "The doctrine of res judicata 'prevents repeated attacks on a final judgment and applies to issues that were or might have been previously litigated.'" *State v. Russell,* 10th Dist. No. 06AP-498, 2006-Ohio-6221, ¶ 12; *State v. Lindsay,* 5th Dist. Richland No. 2019 CA 0059, 2019-Ohio-5283, ¶21-22. Andrews' affidavit submitted in support of the present motion does not add anything new; it merely repeats the statements he made at his sentencing hearing that Roberts already had in his possession. *See, Motion for New Trial Rule 33*, filed Oct. 27, 2008 at Exhibit "C." [Docket Number 202]. Roberts raised the issue of Andrew's statements and the trial court ruled on the issue of Andrews' statements made during his plea hearing in the trial court's Judgment Entry filed March 20, 2009 overruling Roberts's motion for a new trial that he had filed on October 27, 2008. Accordingly, we find that Roberts's motion is barred by res judicata.

{¶42} In light of all of the foregoing, this Court finds that the trial court did not abuse its discretion in denying appellant's Crim.R. 33(B) motion for leave to file a motion for new trial based on newly discovered evidence.

{¶43} Appellant's First and Second Assignments of Error are overruled.

{¶44} The judgment of the Guernsey County Court of Common Pleas is affirmed.

By Gwin, P.J.,

Hoffman, J., and

Wise, John, J., concur